**Electronically Filed
Supreme Court
SCWC-14-0001125
06-DEC-2017
02:28 PM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---oOo---

_____

PEAK CAPITAL GROUP, LLC,
Respondent/Plaintiff-Appellee,

vs.

CHRISTOPHER HULL PEREZ, JENNIFER HULL PEREZ,
Respondents/Defendants-Appellees,

and

LINDA WILCOX ROBINSON,
Petitioner/Real-Party-In-Interest-Appellant,

and

CINDY A. PEDRO,
Respondent/Real-Party-In-Interest.

_____

SCWC-14-0001125

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-14-0001125; CIVIL NO. 09-1-2899)

DECEMBER 7, 2017

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY McKENNA, J.

## I.  Introduction

Self-represented litigant Linda Wilcox Robinson ("Robinson") seeks review of the Intermediate Court of Appeals' ("ICA") judgment on appeal entered pursuant to its summary disposition order.  The ICA affirmed the Circuit Court of the First Circuit's[1] ("circuit court") order denying Robinson's motion for return of her personal possessions allegedly taken during the execution of a writ of ejectment after the foreclosure sale of a house in which she resided.  Peak Capital Grp., LLC v. Perez, CAAP-14-0001125 (App. Mar. 23, 2016) (SDO).

We construe Robinson's certiorari application to assert that the ICA erred by affirming the circuit court's denial of her motion for the following reasons:[2] (1) the purchaser of the property at foreclosure, mortgagee Peak Capital Group, LLC ("Peak Capital"), did not give her the minimum 90-day notice to vacate required by the federal Protecting Tenants at Foreclosure Act of 2009 ("PTFA"); (2) Peak Capital violated her rights under Hawaii Revised Statutes ("HRS") Chapter 521, the Residential Landlord-Tenant Code ("landlord-tenant code"), including the 45-day notice to vacate required to be given to month-to-month tenants by HRS § 521-71 (2006 & Supp. 2008); (3) the circuit court's refusal to order return of her possessions violated her

---

[1]    The Honorable Bert I. Ayabe presided.

[2]    Courts are to construe pro se filings liberally.  See Waltrip v. TS Enters., 140 Hawai'i 226, 239, 398 P.3d 815, 828 (2016).

2

constitutional due process rights[3]; and (4) the circuit court's refusal to return her possessions was otherwise in error.

We hold as follows: (1) although the PTFA does not require a residential lease to be in writing, Robinson was not entitled to PTFA protections because she did not qualify as a "bona fide tenant" as required by the PTFA; (2) in general, the landlord-tenant code applies to residential leases entered into before a lis pendens, but Robinson was not a residential tenant, and the lis pendens made the subsequent written lease to Robinson's non-profit for a room/office in the property subject to the court's decision as to its appropriate disposition; and (3) under the circumstances of this case, Robinson was afforded her due process rights to notice and an opportunity to be heard at a meaningful time and in a meaningful manner; but (4) the circuit court should have granted Robinson's motion for return of possessions, when the possessions included items of no financial value to Peak Capital but with great sentimental value to Robinson, such as her grandparent's ashes.

---

[3]     Robinson also argued before the circuit court and ICA that Peak Capital improperly foreclosed upon the property.  We do not further address this argument because she does not reassert this argument on certiorari, and the grounds upon which she based her argument, that the mortgage could not secure the personal debt of Christopher Perez because the property was held by the Perezes as tenants by the entirety, is meritless.  At the time the note and mortgage were signed by Christopher Perez, he owned the property as a tenant in severalty.

## II.   Background

### A.   Loan and foreclosure

On May 15, 1994, Christopher Hull Perez ("Perez") and Jennifer Hull Perez (collectively, "the Perezes") purchased a fee simple residence in Waialua, Hawai'i ("the property"), as tenants by the entirety.[4]  On October 24, 2007, Perez, individually, refinanced the original loan through a mortgage loan from Bridgelock Capital ("Bridgelock"), which was secured by a mortgage.  The deed and mortgage were recorded in the Office of the Assistant Registrar of the Land Court of the State of Hawai'i ("Land Court").

On November 18, 2009, the note and mortgage were assigned to Peak Capital Group.  These documents were also recorded in Land Court.  On December 16, 2009, Peak Capital filed a foreclosure complaint against the Perezes.  Peak Capital also filed a notice of pendency of action ("lis pendens") pursuant to HRS § 634-51, which was recorded with the Land Court on December 17, 2009 pursuant to HRS § 501-151.

Perez was served with the complaint at the property on December 17, 2009.  A few weeks later, on January 4, 2010, Robinson prepared a two-page letter to counsel for Peak Capital

---

[4]     The focus will be on facts relevant to Robinson's certiorari application; Robinson's assertions on behalf of other occupants of the property are generally not included because these other occupants are not parties to the certiorari proceeding.

on letterhead stating "CHRISTOPHER H. PEREZ & REV. DR. LINDA WILCOX ROBINSON" at the top, with the property address, a fax number, a cell phone number, and an email address listed below. Robinson, the only signator, indicated she was writing in response to the foreclosure complaint and requested an extension of time to answer, stating, "we will need to file a motion to extend the time to answer this complaint as we are currently obtaining legal counsel."  (Emphasis added.)  She also indicated she and Perez had thought legal counsel they had retained to negotiate a loan modification with Peak Capital would also represent them in the foreclosure lawsuit, but learned he would not.  Robinson's letter ended as follows:

> Also, I believe you have the "Power of Attorney" in your file for Christopher's consent in my communication with this subject matter.  If you need an additional copy, I can provide it to you again.  Again, Mahalo.  Should there be any other information you need please feel to contact me.

The foreclosure complaint included an allegation against Doe Defendants,[5] but Robinson was never named as a defendant.

---

[5]  Hawai'i Rules of Civil Procedure ("HRCP") Rule 17(d) (2000) provides:

> **(d) Unidentified defendant.** (1) When it shall be necessary or proper to make a person a party defendant and the party desiring the inclusion of the person as a party defendant has been unable to ascertain the identity of a defendant, the party desiring the inclusion of the person as a party defendant shall in accordance with the criteria of Rule 11 of these rules set forth in a pleading the person's interest in the action, so much of the identity as is known (and if unknown, a fictitious name shall be used), and shall set forth with specificity all actions already undertaken in a diligent and good-faith effort to ascertain the person's full name and identity.

On January 6, 2010, Perez filed a pro se motion requesting until January 27, 2010 to respond to the complaint. Perez did not file an answer or make any other appearance in the foreclosure lawsuit for over three years, when he filed the May 8, 2013 motion discussed below.

Jennifer Perez was served with the complaint in Texas on February 24, 2010. On October 12, 2010, default was entered against both Perezes. The next day, October 13, 2010, the circuit court entered a minute order denying Perez's January 6, 2010 motion for additional time to respond to the complaint, on the grounds that default had already been entered. Perez had already had more than eight months to respond to the complaint.

On January 3, 2011, Peak Capital filed a motion for summary judgment and for an interlocutory decree of foreclosure. On February 15, 2011, the circuit court entered its findings of fact, conclusions of law, and order granting the motion. The circuit court appointed a commissioner and ordered that the property be sold at public auction. The circuit court also entered a judgment on the same day ("foreclosure judgment"). The Perezes did not appeal the foreclosure judgment.

_____

(2) Subject to HRS section 657-22, the person intended shall thereupon be considered a party defendant to the action, as having notice of the institution of the action against that person, and as sufficiently described for all purposes, including services of process, and the action shall proceed against that person.

6

**B.   Sale of property and writ of ejectment**

Perez apparently refused to cooperate with the commissioner to arrange open houses before the foreclosure sale.  Without any open houses, a public auction to sell the property took place on February 14, 2012.  Peak Capital submitted the highest bid, a credit bid of $359,000.

On March 12, 2012, Peak Capital filed a motion to confirm the sale, to distribute its proceeds, and for a writ of ejectment ("motion to confirm"), which was scheduled for hearing on April 12, 2012.  Perez filed a bankruptcy petition on April 11, 2012, the day before the scheduled hearing, so the motion was not heard on that date.  Perez's bankruptcy petition was dismissed on May 14, 2012 for failure to file required documents.  The hearing on the motion to confirm was therefore rescheduled for June 28, 2012.  Just before that hearing, however, counsel for Peak Capital was notified that Perez's bankruptcy petition had been reactivated.

Perez received a bankruptcy discharge on August 29, 2012. On August 31, 2012, he filed a motion in bankruptcy court to avoid Peak Capital's lien, which Peak Capital opposed; the record does not reflect the basis of the motion.  It appears this motion was denied, as Peak Capital renoticed the hearing on its motion to confirm before the circuit court for April 11,

7

2013, and the court orally granted the motion at that hearing. Perez did not appear.

On May 8, 2013, the circuit court entered the order granting Peak Capital's motion to confirm. A final judgment and a writ of ejectment were also entered on the same date. The writ of ejectment ordered that law enforcement personnel remove the Perezes and anyone "holding under or through them," as well as their personal belongings, and put Peak Capital in possession of the property.

## C. Perez's preliminary post-judgment motions

On May 8, 2013, the same date as the final judgment and writ of ejectment, Perez filed a pro se motion to set aside entry of default and default judgment ("motion to set aside default judgment"). Perez asserted the mortgage securing the personal loan he obtained in 2007 did not create a lien on the property because the Perezes, a married couple, owned the property as tenants by the entirety.

Two days later, on May 10, 2013, Perez submitted an ex parte motion for a temporary restraining order to stay execution of the writ of ejectment, asserting the same grounds. In the ex parte motion, Perez represented that his 94-year-old physically infirm grandfather, "his immediate family longtime best friend & roommate, LINDA WILCOX ROBINSON, who facilitates & runs a Hawaii registered non-profit foundation, T.I.T.A., Inc. (Together in

Total Aloha, Inc.),"  ("T.I.T.A.") and two formerly homeless women, Cynthia Pedro ("Pedro") and Jane Silos ("Silos") resided with him on the property.  He did not characterize any occupants as tenants.  The circuit court denied the ex parte motion on May 14, 2013.

On June 7, 2013, Peak Capital filed its memorandum in response to Perez's motion to set aside default judgment.  Peak Capital argued Perez's motion was untimely because the foreclosure judgment had entered over two years earlier, on February 15, 2011.  Peak Capital also argued it would be prejudiced if the motion was granted, as Perez had continued to live in the property for over five years without any payment. It also pointed out Perez had no meritorious defense, attaching documents showing that although Perez had previously held the property with his wife as tenants by the entirety, at the time the subject note and mortgage were signed, Perez held the property individually as a tenant in severalty, and that after the mortgage, he reconveyed the property to himself and his wife as tenants by the entirety.  Peak Capital also argued Perez inexcusably neglected to respond to the foreclosure lawsuit. After the June 18, 2013 hearing on Perez's motion to set aside default judgment, the circuit court entered an order denying the motion on July 15, 2013.

Title to the property was then transferred from Perez to Peak Capital via a commissioner's quitclaim deed dated September 30, 2013, which was filed in the Land Court on November 4, 2013.

## D. Execution of the writ of ejectment and additional post-judgment motions

On December 7, 2013, deputy sheriff Thomas Cayetano, accompanied by two police officers and two other men, including investigator Terry Pennington, went to the property.  Perez was not present, but Robinson and other occupants were.  According to Pennington, Robinson told him she was Perez's girlfriend and had lived there for many years without a rental or lease agreement.  The writ of ejectment was not executed; rather, the occupants were notified of Peak Capital's intent to evict them if they did not voluntarily leave within one week.

On or about December 11, 2013, Robinson and the other occupants sent a letter to the circuit court regarding the writ of ejectment.  In relevant part, the top left of the first page of this letter reflected T.I.T.A. as a tenant in unit A-2. Robinson signed the letter on behalf of T.I.T.A.; the letter discussed and asserted tenant rights under the PTFA.

On December 13, 2013, Perez, now represented by counsel, filed another motion to lift the October 12, 2010 entry of default and for relief from the February 25, 2011 default judgment ("motion to lift default judgment"); this motion was

scheduled for hearing on January 21, 2014.  Counsel stated Perez had been served with the writ of ejectment and had been given one week to vacate the property.  Counsel further represented he had requested an additional thirty days to vacate the property from Peak Capital's attorney, but that the request had been denied.  Attached to the motion was a letter dated December 12, 2013 from Robinson to Peak Capital as agent for T.I.T.A. asserting the December 7, 2013 seven-day notice to vacate violated the PTFA.  Also attached were the first and last pages of a purportedly eleven-page Rental Agreement between Perez and T.I.T.A., dated May 1, 2012, stating its "initial term" began May 1, 2012 and ended April 30, 2013, for rental of a "[r]oom/office in main house" in the property.  This document did not reflect any lease rent amount; the last page was signed by Perez and Robinson as agent for T.I.T.A.

On December 16, 2013, Robinson filed an ex parte motion to stay execution of writ of possession and judgment for possession ("motion to stay").  This motion asserted:

> A Judgment for Possession and Writ of Execution for Possession was entered against me on the above date. I have filed a Motion to Set Aside Default Judgment[6] for reasons set forth in the attached declaration. I am requesting a Stay of the Judgment for Possession And Writ of Possession until the Motion to Set Aside Default Judgment is heard by this Court.

---

[6]  This referred to Perez's December 13, 2013 motion to lift default judgment.

11

Robinson attached a letter to the circuit court alleging PTFA violations along with a copy of the PTFA.  The circuit court temporarily granted this motion and stayed enforcement of the writ of ejectment until a hearing set for December 27, 2013 on Robinson's motion to stay.

Peak Capital filed its memorandum in opposition to the motion to stay on December 20, 2013.  Peak Capital argued that (1) because its lis pendens had been filed on December 17, 2009, anyone that acquired an interest in the property after that date was subject to the May 8, 2013 final judgment and writ of ejectment; (2) as a foreclosing mortgagee, it was not acting as a landlord; (3) because the alleged tenants did not record or register their tenancy interests in the Land Court, their claims were unenforceable, citing City & County of Honolulu v. A.S. Clarke, Inc., 60 Haw. 40, 44-45, 587 P.2d 294, 297 (1978).[7]

Only counsel for Peak Capital and Pedro appeared at the December 27, 2013 hearing on the motion to stay.  Peak Capital orally argued that because there was no lease filed, there was no documentation indicating that any of the occupants, including Robinson, qualified as bona fide tenants entitled to protection

---

[7]    The referenced pages state that Clarke's failure to record with the Land Court a letter allegedly giving him a twenty-five-year ground lease to the subject property precluded him from asserting any interest in the property against the City.  The referenced pages also cite to HRS § 501-121 (1976) which then and still provides that a "(l)ease of registered land for a term of one year or more shall be registered."  Because this statute was not raised, and it is not necessary to do so, we do not address its applicability in this case.

under the PTFA. The circuit court denied the motion without prejudice, finding that the occupants, including Robinson, had failed to properly file documents establishing they were bona fide tenants under the PTFA.

Soon after the hearing ended, Robinson filed a reply memorandum. Robinson asserted Federal Emergency Management Agency records would show that after severe storms and flooding in December 2008, she became a tenant at the property through lease agreements beginning in April 14, 2009. She further alleged that she and Perez entered into an agreement for Robinson to act as his "Landlord Agent in exchange for her rent of T.I.T.A., Inc. office space/room" as it "was conducive for all parties as T.I.T.A." to act as "a liaison for those who need assistance in homelessness. . . ." She again alleged PTFA violations.

On January 3, 2014, Robinson filed an emergency motion for reconsideration of the court's December 27, 2013 ruling denying the motion to stay, again requesting an immediate temporary stay ("motion to reconsider"). Robinson stated that because Perez had a longtime friendship with her, there was a verbal agreement allowing her a tenancy for a live-in office. She also stated that after incorporating T.I.T.A., on April 30, 2012, a written lease began on May 1, 2012, and attached a complete copy of a May 1, 2012 rental agreement between Perez and "Linda Wilcox

Robinson for T.I.T.A., Inc." for a "Room/office in main house" of the property; the stated rent was $200 a month.  Robinson again alleged violations of PTFA.  This renewed motion was scheduled for hearing on February 4, 2014.

On January 13, 2014, Peak Capital filed a memorandum in opposition to Perez's December 13, 2013 motion to lift default judgment, repeating arguments contained in its December 20, 2013 memorandum in opposition to motion to stay.  Counsel for Peak Capital and Perez appeared at the January 21, 2014 hearing on this motion.  The circuit court denied Perez's motion via a minute order the next day.

Ten days before the scheduled February 4, 2014 hearing on Robinson's renewed motion, on Saturday, January 25, 2014, Peak Capital executed the writ of ejectment.  Robinson and Peak Capital presented differing accounts of the events of that day. Robinson indicated that although she got a U-Haul later in the day to take away some of the occupants' possessions, the movers quickly began packing and moving possessions soon after arrival, she was treated rudely, and at the end of seven and a half hours, the house was locked up and the occupants were unable to return.  Pennington says the movers loaded Robinson's U-Haul with the things she instructed them to, that Robinson was allowed to pack up the entire office herself, and that he went back to the property for total of three days to allow Perez to

remove his remaining possessions, and once finished, Perez authorized him to throw out the remaining items.  Cayetano and an investigator hired by Peak Capital say they saw Robinson pack her belongings and direct movers on what to pack and move.  Overall, there is no dispute that the occupants had no idea that law enforcement officials would be arriving early that morning to eject them and that some of the occupants' possessions, including Robinson's, were removed and taken to storage.

On January 27, 2014, Peak Capital filed its memorandum in opposition to Robinson's January 3, 2014 motion to reconsider.  Peak Capital argued the PTFA was inapplicable because Robinson did not have a "bona fide lease" resulting from "an arms-length transaction."

On February 4, 2004, Robinson filed a reply memorandum regarding the motion to reconsider scheduled for hearing that day.  Robinson asserted Perez had informed Peak Capital regarding her tenancy and lease agreements on multiple occasions along with loan modification application forms and tax returns, to provide requested proof of income to Peak Capital's loan servicers.  Robinson argued that her friendship with Perez was not relevant because the "bona fide" lease was between Perez and T.I.T.A.  Robinson alleged that in addition to requiring them to incur expenses for a U-Haul and storage rentals, the ejectment had resulted in damage to her personal and business property and

there had been an unlawful taking of her possessions without disclosure of the location of the possessions or possible redemption methods. Robinson also argued violations of PTFA and due process, and requested a cancellation of the writ of ejectment.

At the February 4, 2014 hearing on the motion to reconsider, counsel for Peak Capital and Perez appeared along with Robinson. Robinson asserted her due process rights had been violated through the sudden early morning ejectment and the taking of her property, and requested a return of her possessions. Peak Capital responded that a request for return of possessions was not the subject of the motion being heard and that the parties should make this request to the sheriff. It also argued there was no stay of the writ and that Robinson did not have a bona fide tenancy. Peak Capital further argued that because Robinson's lease was entered into a significant time after the foreclosure action had commenced, the motion should be denied. Perez pointed out that although the circuit court had denied the previous motion, it had encouraged the occupants to refile their motion with copies of the leases, which they had done immediately. Perez requested a return of all the personal possessions. Peak Capital responded that it had no problem with the request to return personal property, and asked Perez to put the request in writing. Robinson then argued that contrary to

Peak Capital's arguments regarding the leases post-dating the lis pendens, the leases had begun in 2007.  The court took the matter under advisement.

On February 5, 2014, Peak Capital filed a supplemental memorandum in response to a question the circuit court had asked during the hearing regarding what the date the "notice of foreclosure" would be under 2010 amendments to the PTFA.  According to Peak Capital, the PTFA defined "notice of foreclosure" as the "date on which complete title of a property is transferred to a successor entity or person as a result of an order of a court or pursuant to provisions in a mortgage, deed of trust, or security deed."  Peak Capital represented that transfer of title occurred upon the February 14, 2012 <u>auction</u> of the property.  Peak Capital argued that because documents filed January 3, 2014 showed Robinson's lease was dated May 1, 2012, which post-dated the February 14, 2012 auction, she had no rights as a bona fide tenant under 2010 amendments to the PTFA.

On February 13, 2014, Pennington e-mailed Robinson informing her that Peak Capital requested reimbursement of the eviction costs of $10,713.47 to release her property, but that Peak Capital would also consider a counter-offer.  The email also stated that if Robinson did not respond, Peak Capital would not continue to pay for the storage of her property.

On February 14, 2014, the circuit court entered its minute order denying the motion to reconsider. In relevant part, the circuit court ruled as follows:

> THE COURT FINDS THAT THE TENANTS ARE NOT BONA FIDE AS THE LEASE AGREEMENTS WERE EXECUTED, OR EXTENDED, AFTER THE NOTICE OF FORECLOSURE. FURTHER, THE COURT FINDS THAT MS. WILCOX ROBINSON'S LEASE AGREEMENT IS NOT THE RESULT OF AN ARMS LENGTH TRANSACTION[.] . . . .

Robinson responded to Pennington's February 14, 2014 e-mail on February 18, 2014, stating that she had been rear-ended by a drunk driver, and saying she would get back to him in a few days.

On March 13, 2014, the circuit court entered its order denying the January 3, 2014 motion to reconsider.

## E.    Robinson's motion for return of possessions

On May 7, 2014 Robinson filed a motion for return of possessions on behalf of herself and Pedro. Among other things, Robinson alleged violations of the PTFA and landlord-tenant code. Robinson identified the property taken as yearbooks, baby pictures, memorabilia of her deceased father, ashes of her deceased grandparent, sentimental childhood books, toys, prescription medication, legal files and evidence for this case, bedding, food, dog food, shoes, a cable box, a DVD player and rentals, mail, and work tools; she also indicated third-party files related to her work as an Internal Revenue Service enrolled agent had been taken. Robinson also attached a

18

"complaint" for damages to her motion, alleging that as a result of the unlawful eviction she had incurred charges for loss of the items above as well as to rent a U-Haul and storage unit, a hotel room, meals and outside facilities, pet boarding accommodations, other daily items, work loss, lost appliances left in the property (refrigerator, microwave, range and oven, and gas dryer), and prescription contacts and supplies.

On June 9, 2014, Peak Capital filed its memorandum in opposition to the motion for return of possessions.  Peak Capital did not contest the list of items Robinson alleged had been taken during execution of the writ of ejectment. It also did not indicate whether Robinson's possessions were still in storage or whether they had been sold or discarded.  Instead, Peak Capital argued the circuit court had already ruled that Robinson was not entitled to relief under the PTFA because she was not a bona fide tenant.  It also argued that Perez had no interest in the property to lease after being divested of any interest in the property as of the date of the commissioner's auction.  Peak Capital also argued that Robinson had been advised of the status of her possessions through Pennington's February 13, 2014 e-mail, and that she was not entitled to the possessions until she paid the eviction costs.

In her June 23, 2014 reply memo, Robinson represented she had personally entered into a lease agreement with Perez in 2005

and that on April 30, 2010, the tenant had changed to T.I.T.A. with herself as agent. She argued that she had become a holdover tenant pursuant to HRS § 521-71(c) at the time of the foreclosure auction and that, pursuant to that statute, Peak Capital, as purchaser, had sixty days to either file a new eviction action or renew the lease, and because it had done neither, pursuant to law, she became a holdover tenant subject to the landlord-tenant code. She also cited to a 1982 California Supreme Court case arising out of a writ of eviction for unlawful detainer (similar to summary possession in Hawai'i), Arrieta v. Mahon, 31 Cal. 3d. 381, 644 P.2d 1249 (1982), which held that eviction of occupants claiming a right to possession unnamed in a writ of eviction violated those occupants' procedural due process rights. Her reply memorandum also attached declarations from others stating they had known Perez and his tenant, Robinson, for over seven years. She also attached a February 17, 2014 special warranty deed transferring title to the property from Peak Capital to Kukui Farms Limited Liability Company.

At the June 24, 2014 hearing on the motion for return of possessions, Robinson asked the circuit court to order release of her possessions, arguing she had not been afforded due process before the ejectment occurred. She repeated her previous HRS § 521-71(c) arguments. She asserted she was

entitled to damages for wrongful eviction and denial of due process and constitutional rights.  Peak Capital reiterated its argument that Robinson was not a bona fide tenant, that Robinson's alleged rental agreement was dated May 1, 2012, and that because its lis pendens had recorded on December 17, 2009, Robinson took subject to the outcome of the foreclosure.  Peak Capital also argued that because the property was a land court property and Robinson did not record any interest against the certificate of title, her claims were unenforceable under Clarke.  Peak Capital argued that Robinson was required to pay the eviction costs of more than $10,000 if she wanted a return of her property.

Robinson argued in rebuttal that she was a tenant before the lis pendens was filed.  She also argued that Peak Capital should not be able to claim the move out costs because it chose to execute the writ of ejectment while a hearing was pending, and that if Peak Capital had waited, none of the expenses it was now claiming would have been incurred.

The circuit court took the motion for return of possessions under advisement, then summarily denied it via a minute order on June 26, 2014.  A written order denying the motion was filed on August 27, 2014.  Robinson appealed the circuit court's denial of this motion to the ICA on September 10, 2014.

21

### F.   ICA Proceedings

#### 1.   Opening Brief

Robinson filed a notice of appeal on behalf of herself and Pedro.  Because an individual not licensed to practice law cannot represent another person in court, the ICA dismissed the appeal as to Pedro.  In her opening brief, in relevant part, Robinson contended the circuit court erred in denying her motion for return of possessions because Peak Capital failed to give Robinson proper notice to vacate under the PTFA and the landlord-tenant code.  She also claimed she was denied due process and equal protection of the law when the circuit court denied her motion for return of possessions.

#### 2.   Answering Brief

Peak Capital argued Robinson did not appeal the circuit court's foreclosure judgment or the final judgment and writ of ejectment.  Peak Capital further argued that because the Perez's property was foreclosed upon in 2011, Perez did not have a valid interest in the property to lease to Robinson when he signed a lease with T.I.T.A. in 2012.

#### 3.   Reply Brief

Robinson argued Peak Capital became the new landlord as Perez's successor in interest.  According to Robinson, Peak Capital was therefore required under HRS § 521-71(e) to either renew her lease or file an eviction process within 60 days of

22

taking ownership of the property. Because Peak Capital undertook neither of these actions, Robinson argued that she became a month-to-month tenant entitled to 45 days of notice to vacate the property.

### 4. ICA Summary Disposition Order

In relevant part, the ICA ruled that Robinson should have raised her arguments through an appeal from the circuit court's final judgment and writ of ejectment. See Peak Capital Group, LLC, SDO at 3. The ICA also concluded that the circuit court did not err in denying her motion for return of possessions as her rights under the PTFA, the landlord-tenant code, and constitutional due process were not violated. See id. at 2-5. The ICA therefore affirmed the circuit court's August 27, 2014 order denying the motion for return of possessions. See id. at 6.

### III. Standards of Review

### A. Interpretation of a statute

Statutory interpretation is a question of law reviewable de novo. See Citizens Against Reckless Dev. v. Zoning Bd. of Appeals, 114 Hawai‘i 184, 193, 159 P.3d 143, 152 (2007) (citations omitted). When construing statutes, the court is governed by the following rules:

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain

23

> and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

> When there is ambiguity in a statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining legislative intent, such as legislative history, or the reason and spirit of the law.

114 Hawai'i at 193, 159 P.3d at 152-53 (citations and quotation marks omitted).

## B.   Findings of fact and conclusions of law

A trial court's findings of fact are reviewed under the "clearly erroneous" standard of review.  Beneficial Haw., Inc v. Kida, 96 Hawai'i 289, 305, 30 P.3d 895, 911 (2001).  A finding of fact is clearly erroneous when "the record lacks substantial evidence to support the finding," or "despite evidence to support the finding, the appellate court is left with a definite and firm conviction . . . that a mistake has been committed." Id. (citations omitted).  The circuit court's conclusions of law are reviewed de novo, under the right/wrong standard.  Hawaii Nat'l Bank v. Cook, 100 Hawai'i 2, 7, 58 P.3d 60, 65 (2002).

## C.   Courts sitting in equity

Foreclosure is an equitable action.  Hawaii Nat'l Bank, 100 Hawai'i at 7, 58 P.3d at 65.  "Courts of equity have the power to

mold their decrees to conserve the equities of the parties under the circumstances of the case." Honolulu, Ltd. v. Blackwell, 7 Haw. App. 210, 219, 750 P.2d 942, 948 (1988).  A court sitting in equity in a foreclosure case has the plenary power to fashion a decree to conform to the equitable requirements of the situation.  Jenkins v. Wise, 58 Haw. 592, 598, 574 P.2d 1337, 1342 (1978).  Whether and to what extent relief should be granted rests within the sound discretion of the court and will not be disturbed absent an abuse of such discretion.  58 Haw. at 597, 574 P.2d at 1341.

## IV. Discussion

In summary, Robinson asserts that ICA erred in affirming the circuit court's denial of her motion for return of possessions because: (1) Peak Capital did not give her the minimum 90-day notice to vacate required by the PTFA; (2) Peak Capital violated her rights under the landlord-tenant code, including the 45-day notice to vacate required to be given to month-to-month tenants by HRS § 521-71; (3) the circuit court's refusal to order return of her possessions violated her constitutional due process rights, including assertions that an unserved lis pendens does not apprise tenants of a foreclosure prior to seizure of their property, and the post-judgment hearings in this case were constitutionally inadequate to

25

satisfy minimum due process standards;[8] and (4) the circuit court's refusal to return her possessions was otherwise in error.

We address each of these issues in turn.

**A.    Although the PTFA does not require a written lease, Robinson was not entitled to PTFA protections because she did not qualify as a "bona fide tenant."**

**1.    Background of the PTFA**

The federal Protecting Tenants Against Foreclosures Act, or PTFA, was signed into law on May 20, 2009 and was effective until December 31, 2014.[9]  Congress enacted the law as a temporary measure to provide more protections to tenants during the mortgage foreclosure crisis.  The PTFA protected residential tenants residing in dwelling units subject to foreclosure by requiring that successors in interest to foreclosed properties provide "bona fide tenants," as defined by the law, with at least 90 days' notice to vacate the property.

Relevant portions of the PTFA provided as follows:

---

[8]    Robinson also asserts the ICA erred by ruling she should have raised her arguments in an appeal from the circuit court's final judgment and writ of ejectment because she was never made a party to the foreclosure proceeding.  Robinson's assertion has merit; this basis of the ICA's ruling is incorrect, as Robinson was not a party.  We vacate the ICA's decision, however, on other grounds.

[9]    The PTFA is located in Title VII of the Helping Families Save Their Homes Act of 2009, Pub. L. No. 111-22, §§ 701-04, 123 Stat. 1632, 1660-61. The PTFA originally had a sunset date of December 31, 2012, but Congress later changed the date to December 31, 2014. Mortgage Reform and Anti-Predatory Lending Act, Pub. L. No. 111-203, § 1484, 124 Stat. 1376, 2204 (2010).

Sec. 702. Effect of Foreclosure on Preexisting Tenancy.

(a)   IN GENERAL.- In the case of any foreclosure on a federally-related mortgage loan or on any dwelling or residential real property after the date of enactment of this title, any immediate successor in interest in such property pursuant to the foreclosure shall assume such interest subject to:

(1) the provision, by such successor in interest of a notice to vacate to any bona fide tenant at least 90 days before the effective date of such notice; and

(2) the rights of any bona fide tenant, as of the date of such notice of foreclosure—

(A) under any bona fide lease entered into before the notice of foreclosure to occupy the premises until the end of the remaining term of the lease, except that a successor in interest may terminate a lease effective on the date of sale of the unit to a purchaser who will occupy the unit as a primary residence, subject to the receipt by the tenant of the 90 day notice under paragraph (1); or

(B) without a lease or with a lease terminable at will under state law, subject to the receipt by the tenant of the 90 day notice under subsection (1),

except that nothing under this section shall affect the requirements for termination of any Federal- or State-subsidized tenancy or of any State or local law that provides longer time periods or other additional protections for tenants.

(b)   BONA FIDE LEASE OR TENANCY.- For purposes of this section, a lease or tenancy shall be considered bona fide only if

(1) the mortgagor or the child, spouse, or parent of the mortgagor under the contract is not the tenant;

2) the lease or tenancy was the result of an arms-length transaction; and

3) the lease or tenancy requires the receipt of rent that is not substantially less than fair market rent for the property or the unit's rent is reduced or subsidized due to a Federal, State, or local subsidy.

Pub. L. No. 111-22, § 702, 123 Stat. at 1660-61, as amended by

Pub. L. No. 111-203, § 1484, 124 Stat. at 2204.

Federal courts have generally agreed that the language of the PTFA does not create a federal private cause of action and that tenants cannot use the PTFA to assert affirmative claims. See Mik v. Fed. Home Loan Mortg. Corp., 743 F.3d 149, 160 (6th Cir. 2014). Rather, because the PTFA is framed in terms of "protections" for tenants, courts have interpreted the statute as providing a defense in state eviction proceedings. Logan v. U.S. Bank Nat'l Ass'n, 722 F.3d 1163, 1173 (9th Cir. 2013). In many jurisdictions, tenants have used the PTFA as a defense to unlawful detainer[10] actions initiated in state court by banks or landlords. See, e.g., Blue Mountain Homes, LCC v. Short, No. 2:13-cv-0913, 2013 WL 1966224, at *2 (E.D. Cal. May 10, 2013); Wells Fargo Bank v. Lapeen, No. C 11-01932, 2011 WL 2194117, at *4 (N.D. Cal. June 6, 2011).

## 2. Application of the PTFA to Robinson

Robinson has argued throughout the course of this litigation that Peak Capital violated her rights under the PTFA.

We preliminarily note that the circuit court's orders up to the final judgment, which were entered while the PTFA was in effect from May 20, 2009 until December 31, 2014, did not reference its possible application. The circuit court's

---

[10] Black's Law Dictionary 543 (10th ed. 2014) defines "unlawful detainer" as "[t]he unjustifiable retention of the possession of real property by one whose original entry was lawful, as when a tenant holds over after lease termination despite the landlord's demand for possession."

February 15, 2011 interlocutory decree of foreclosure included
the following language:

> L. In the event the Commissioner deems it advisable
> to remove the occupants and their personal belongings from
> the Property, the Commissioner may obtain a writ of
> possession and in his/her sole discretion arrange for the
> removal of the personal effects to a suitable storage area,
> to be stored for a period of thirty (30) days. If such
> personal effects are not claimed within the thirty (30) day
> period, the Commissioner may, in his/her sole discretion,
> dispose of such personal belongings in a commercially
> reasonable manner. Any funds generated by such sale shall
> be distributed according to the Order of this Court.
> The costs of removal of occupants and their personal
> belongings shall be considered a foreclosure expense.
>
> M. All Defendants, including Defendant PEREZ, and
> all other parties hereto, and all persons claiming by,
> through or under them, except any governmental authority
> enforcing a lien for unpaid real property taxes as to the
> Property, will be perpetually barred of and from any and
> all right, title and interest in the Property or any part
> thereof, upon closing of the sale herein authorized.
>
> N. Pursuant to H.R.S. §634-51 and §501-151, as amended, any
> and all other or further encumbrancers or purchasers in
> respect of the Property or any part thereof, whose interest
> arises from and after December 17, 2009, will be forever
> barred of and from any and all right, title and interest
> to the Property and every part thereof upon closing of the
> sale herein authorized.

Paragraph L would seemingly have allowed the commissioner to
obtain a writ of possession to remove occupants from the
property without complying with the PTFA.  In addition, the
terms of the May 8, 2013 writ of ejectment could have also
violated rights of bona fide tenants under the PTFA, as nothing
was stated requiring compliance with that law:

> THE STATE OF HAWAII:
>
> TO THE DIRECTOR OF PUBLIC SAFETY OF THE STATE OF HAWAII, OR
> HIS DEPUTY, THE CHIEF OF POLICE OF THE HONOLULU POLICE
> DEPARTMENT, OR HIS DEPUTY,OR TO ANY POLICE OFFICER OF THE
> CITY AND COUNTY OF HONOLULU:

29

> Pursuant to the Order Granting Plaintiff's Motion for Confirmation of Sale, Distribution of Proceeds, and For Writ of Ejectment filed herein, Plaintiff PEAK CAPITAL GROUP, LLC obtained an Order for Writ of Ejectment against Defendants CHRISTOPHER HULL PEREZ and JENNIFER HULL PEREZ, and all persons holding under or through them, for possession of the [property].

> NOW, THEREFORE, YOU ARE HEREBY COMMANDED TO REMOVE FORTHWITH THE SAID Defendants CHRISTOPHER HULL PEREZ and JENNIFER HULL PEREZ, and all persons holding under or through him [sic] from the premises above-mentioned, including their personal belongings and properties, and put Plaintiff PEAK CAPITAL GROUP, LLC, or its nominee, in full possession thereof, and make due return of this Writ with what you have endorsed thereon.

With respect to whether Robinson was entitled to protections provided by the PTFA, the circuit court initially ruled on December 27, 2013[11] that Robinson did not qualify as a "bona fide tenant" because the record did not contain a written lease. Section 702(a)(2)(B) of the PTFA explicitly provides that "any immediate successor in interest . . . shall assume such interest subject to . . . the rights of any bona fide tenant . . . without a lease or with a lease terminable at will under state law, subject to the receipt by the tenant of the 90 day notice under paragraph (1). . . ." Pub. L. No. 111-22, § 702(a)(2)(B), 123 Stat. at 1661. Thus, the plain language of the PTFA clearly extends its protections to tenants without written leases whose tenancies otherwise meet "bona fide tenancy" requirements. To the extent the circuit court's initial ruling was based on the lack of a written lease in the record, it was in error.

---

[11] See Section II(d), supra (discussing the circuit court's December 27, 2013 ruling on Robinson's motion to stay).

An appellate court may, however, affirm a decision of a lower court on any ground in the record which supports affirmance.  See Canalez v. Bob's Appliance Serv. Ctr., Inc., 89 Hawaiʻi 292, 301, 972 P.2d 295, 304 (1999).  With respect to Robinson's PTFA allegations, although a written lease was not required, Robinson was entitled to PTFA protection only if she also otherwise qualified as a "bona fide tenant."  Section 702(b)(2) of the PTFA also requires that a "bona fide tenancy" be one that is "the result of an arms-length transaction."  The circuit court specifically found in its February 14, 2014 minute order denying Robinson's motion to reconsider, however, that Robinson's lease agreement was not the result of an arms-length transaction.  Substantial evidence supports this finding.

For example, after Perez was served with the foreclosure complaint December 17, 2009, it was Robinson who responded to Peak Capital's counsel on letterhead listing her name along with Perez's, stating that she was writing in response to the foreclosure complaint, requesting more time to answer, as "we will need to file a motion to extend time to answer. . . ."  She also stated she and Perez had earlier retained an attorney to negotiate a loan modification with Peak Capital, and that Peak Capital should have a copy of Perez's power of attorney naming her in their files.  In addition, in his first filing after the January 6, 2010 motion to extend time to answer, the May 8, 2013

31

motion to set aside default judgment, Perez identified his 94-year old-grandfather, Robinson, "his immediate family longtime best friend & roommate," and two formerly homeless women as residing with him on the property, but never characterized any of them as tenants or mentioned any leases.  In addition, when Robinson appeared in the lawsuit from December 11, 2013 and thereafter, she repeatedly asserted that it was T.I.T.A. that had a lease for a room/office, eventually stating in her February 4, 2014 reply memorandum to the motion to reconsider that any lease was between Perez and T.I.T.A, with her as agent for T.I.T.A.  Also, the lease only stated a rental of $200 a month for an entire room in the property.

The PTFA only protects "bona fide tenants" with residential lease agreements, whether oral or written, resulting from arms-length transactions.  There was substantial evidence for the circuit court's ruling that Robinson was not a "bona fide tenant," whether based on its ruling that there was no arms-length transaction, or based on evidence indicating there was no residential lease.  Therefore, the circuit court did not err in ruling Robinson was not entitled to PTFA protections.

**B.    The Residential Landlord-Tenant Code applies to residential leases entered into before a lis pendens, but Robinson was not a residential tenant, and the lis pendens made the subsequent written lease to T.I.T.A. subject to the decision of the court as to its disposition.**

Robinson also asserts the ICA erred in affirming the circuit court's denial of her motion for return of possessions because Peak Capital violated her rights under the landlord-tenant code, including the 45-day notice to vacate required to be given to month-to-month tenants by HRS § 521-71.

**1.    Applicability of Chapter 521**

With respect to Robinson's argument that the landlord-tenant code applies to purchasers at a foreclosure sale, HRS § 521-2 (2006) provides:

> **Purposes; rules of construction.**  (a)  This chapter shall be liberally construed and applied to promote its underlying purposes and policies.
> (b)  The underlying purposes and policies of this chapter are:
> (1)  To simplify, clarify, modernize, and revise the law governing the rental of dwelling units and the rights and obligations of landlords and tenants of dwelling units;
> (2)  To encourage landlords and tenants to maintain and improve the quality of housing in this State; and
> (3)  To revise the law of residential landlord and tenant by changing the relationship from one based on the law of conveyance to a relationship that is primarily contractual in nature.

Pursuant to HRS § 521-2, the landlord-tenant code applies "landlords" and "tenants" of "dwelling units."  These terms are defined by HRS § 521-8 (2006):

> "Dwelling unit" means a structure, or part of a structure, which is used as a home, residence, or sleeping place by one person or by two or more persons maintaining a common household, to the exclusion of all others.

> "Landlord" means the owner, lessor, sublessor, assigns <u>or</u> <u>successors in interest of the dwelling unit</u> or the building of which it is a part and in addition means any agent of the landlord.
> . . . .
> "Tenant" means any person who occupies a dwelling unit for dwelling purposes under a rental agreement.

(Emphasis added.)

As argued by Robinson, the definition of "landlord" includes "successors in interest" of the owner of a dwelling unit. <u>Black's Law Dictionary</u> 1660 (10th ed. 2014) defines "successor in interest" as "(s)omeone who follows another in ownership or control of property"; "A successor in interest retains the same rights as the original owner, with no change in substance." This plain language interpretation is supported by § 702(a) of the PTFA, which also uses the term "successor in interest" to refer to purchasers of foreclosed dwellings.

Thus, in general, the landlord-tenant code applies to purchasers at a foreclosure sale, but only when the lease was entered into before a lis pendens,[12] as further discussed below.[13]

---

[12]    If a valid month-to-month tenancy existed before a lis pendens, it would be subject to Chapter 521, including the forty-five day notice to vacate required by HRS § 521-71(a) (2006). We do not address whether there are circumstances under which a lease entered into before a lis pendens could be invalidated, including possible application of HRS Chapter 651C, the Uniform Fraudulent Transfer Act, under which a fraudulent "transfer" through a lease can be invalidated. <u>See</u> HRS § 651C-1 (2016) (defining of "transfer"); HRS § 651C-4 (2016).

[13]    The National Low Income Housing Coalition lists Hawai'i as one of nineteen states providing no specific legal protections for renters in foreclosed properties as of 2015. National Low Income Housing Coalition, <u>Protecting Tenants At Foreclosure Act</u>, http://nlihc.org/sites/default/files/FactSheet_PTFA_2015.pdf (last visited Nov. 30, 2017). <u>See</u> <u>also</u> Section III of Aleatra P. Williams's article, <u>Real</u> <u>Estate Market Meltdown, Foreclosures and Tenants' Rights</u>, 43 Ind. L. Rev.

## 2.  Effect of lis pendens

Although the landlord-tenant code includes a purchaser at a foreclosure sale in the definition of a landlord, as reflected in the circuit court's February 14, 2014 minute order denying Robinson's motion to reconsider, a lis pendens impacts the effect of leases entered into after its filing.  In this case, Peak Capital filed its lis pendens on December 17, 2009, citing to HRS §§ 634-51 and 501-151.  We note at the outset that HRS § 634-51[14] explicitly provides that in the case of registered land,

---

1185 (2010), for a discussion of different states' treatment of tenants' rights in foreclosure as of the time of that article.  According to the article, as of 2010, the general approaches were that (1) tenancy terminates upon foreclosure; (2) tenancy survives foreclosure; (3) seventeen states required that a tenant be provided with notice before foreclosure (Alaska, California, Colorado, Idaho, Iowa, Louisiana, Maine, Maryland, Minnesota, Missouri, Montana, Nevada, New York, North Carolina, Oregon, Pennsylvania, and Washington); and (4) twelve states, including some in category (3) required that a tenant be made a party to the foreclosure (Connecticut, Florida, Illinois, Indiana, Iowa, Kansas, Maine, Missouri, New York, Ohio, Vermont, and Wisconsin).  See id. at 1196-1207.  The category (3) and (4) states cite due process concerns, which we discuss in the next section.  See id. at 1206.

[14]    On December 17, 2009, HRS § 634-51 provided as follows:

> **Recording of notice of pendency of action.**  In any action concerning real property or affecting the title or the right of possession of real property, the plaintiff, at the time of filing the complaint, and any other party at the time of filing a pleading in which affirmative relief is claimed, or at any time afterwards, may record in the bureau of conveyances a notice of the pendency of the action, containing the names or designations of the parties, as set out in the summons or pleading, the object of the action or claim for affirmative relief, and a description of the property affected thereby.  From and after the time of recording the notice, a person who becomes a purchaser or incumbrancer of the property affected shall be deemed to have constructive notice of the pendency of the action and be bound by any judgment entered therein if the person claims through a party to the action; provided that in the case of registered land, section 501-

35

HRS § 501-151 governs; therefore, we address the effect of HRS §
501-151.  On December 17, 2009, the latter statute provided in
relevant part as follows:

> **Pending actions, judgments; recording of, notice.**  No writ
> of entry, action for partition, or any action affecting the
> title to real property or the use and occupation thereof or
> the buildings thereon, and no judgment, nor any appeal or
> other proceeding to vacate or reverse any judgment, shall
> have any effect upon registered land as against persons
> other than the parties thereto, unless a full memorandum
> thereof, containing also a reference to the number of
> certificate of title of the land affected is filed or
> recorded and registered.  . . . .  This section does not
> apply to attachments, levies of execution, or to
> proceedings for the probate of wills, or for administration
> in a probate court; provided that in case notice of the
> pendency of the action has been duly registered it is
> sufficient to register the judgment in the action within
> sixty days after the rendition thereof.
> As used in this chapter "judgment" includes an order
> or decree having the effect of a judgment.
> Notice of the pendency of an action in a United States
> District Court, as well as a court of the State of Hawaii,
> may be recorded.

HRS § 501-151 (2006).  As we noted in Knauer v. Foote, 101
Hawaiʻi 81, 87, 63 P.3d 389, 395 (2003), the sole function of a
lis pendens is to notify prospective purchasers and
encumbrancers that any interest acquired by them regarding
property in litigation is subject to decision of a court.  A
lis pendens actually "does not prevent title from passing to the
grantee, but operates to cause the grantee to take the property
subject to any judgment rendered in the action supporting the

---

> 102, sections 501-241 to 501-248, and sections [501-261 to
> 501-269] shall govern.
> This section authorizes the recording of a notice of
> the pendency of an action in a United States District
> Court, as well as a state court.

HRS § 634-51 (1993 & Supp. 2009) (emphasis added.)

lis pendens." S. Utsunomiya Enters., Inc. v. Moomuku Country Club, 75 Hawai'i 480, 502, 866 P.2d 951, 963 (1994). Thus, "the practical effect of a recorded lis pendens is to render a . . . property unmarketable and unusable as security for a loan," Utsunomiya, 75 Haw. at 502-03, 866 P.2d 963-64.

With respect to tenants, as discussed earlier, a lis pendens generally does not affect leases entered into before its filing. A lis pendens does not, however, prohibit a mortgagor who still owns the property from leasing the property after its filing; lessees are, however, subject to the decision of the court as to their tenancies. Because a foreclosure suit is an action in equity, however, a circuit court has discretion to fashion an equitable remedy as to tenants of foreclosed properties.[15]

### 3. Application to Robinson

In this case, Robinson repeatedly asserted that the non-profit T.I.T.A. had a lease for a room/office, and conceded in her February 4, 2014 reply memorandum to the motion to reconsider that any lease was between Perez and T.I.T.A, with her signing as agent for T.I.T.A. Therefore, Robinson was not a "tenant" occupying a "dwelling unit" under a "rental agreement," and the landlord-tenant code did not apply to T.I.T.A.'s

---

[15] See Section IV(D), infra.

tenancy. In addition, the May 1, 2012 written lease from Perez to T.I.T.A. with Robinson as agent was after the December 17, 2009 lis pendens; therefore, that lease was subject to the circuit court's decision as to its disposition.

Therefore, there was substantial evidence supporting the circuit court's denial of Robinson's claims under the landlord-tenant code; the circuit court did not err in denying Robinson protections under the code.[16]

## C. Robinson was afforded her procedural due process rights

Robinson also asserts the ICA erred in affirming the circuit court's denial of her motion for return of possessions because the circuit court's refusal to order return of her possessions violated her due process rights. She includes arguments that an unserved lis pendens does not apprise tenants of a foreclosure prior to seizure of their property and that the post-judgment hearings in this case were constitutionally inadequate to satisfy minimum due process standards.

Robinson asserts property interests as a residential tenant and as an owner of tangible personal property. With respect to the former, the United States Supreme Court has recognized a

---

[16] We note Peak Capital ended up executing the writ of ejectment on January 25, 2014, forty-nine days after the December 7, 2013 personal notice to vacate. Robinson was told, however, that she had seven days to vacate, raising questions as to whether Peak Capital would have been in violation of HRS § 521-71 if she had qualified as a month-to-month tenant entitled to protection of the landlord-tenant code, an issue we need not decide at this time.

residential tenant's property interest in continued residence in his or her home.  See Greene v. Lindsey, 456 U.S. 444, 450-51 (1982).  In this case, for the reasons given above, Robinson does not qualify as a residential tenant.  The United States Supreme Court, however, also recognizes property interests in non-residential leases.  U.S. v. Petty Motor Co., 327 U.S. 372, 379 (1946).  In addition, it is axiomatic that Robinson has a property interest in her tangible personal belongings.

With respect to due process protections, as we stated in Mauna Kea Anaina Hou v. Bd. of Land and Natural Res., 136 Hawai'i 376, 388-89, 363 P.3d 224, 236-37 (2015):

> The Hawai'i Constitution provides, "No person shall be deprived of life, liberty or property without due process of law...." Haw. Const. art. I, § 5. Due process calls for such procedural protections as the particular situation demands. The requirements of due process are flexible and depend on many factors, but there are certain fundamentals of just procedure which are the same for every type of tribunal and every type of proceeding.
> The basic elements of procedural due process are notice and an opportunity to be heard at a meaningful time and in a meaningful manner. However, while a fair trial in a fair tribunal is a basic requirement of due process, giving a person "a day in court" does not alone mean that a process is fair.

(Some internal citations, punctuation, quotation marks omitted.)

Robinson asserts her due process rights were violated because an unserved lis pendens does not apprise tenants of a foreclosure prior to seizure of their property.  This assertion may have had merit if Robinson had been a tenant without actual notice of the foreclosure proceeding.  Robinson was, however,

aware of the foreclosure proceeding at least by the time Perez was served with the foreclosure complaint in December 2009. This is clear because she personally responded to Peak Capital, seemingly in the capacity of an owner or owner representative. Her January 4, 2010 letter to Peak Capital's counsel stated she and Perez had together previously retained legal counsel to negotiate a loan modification.  This indicates she was aware of the default well before the filing of the foreclosure action. Whatever Robinson's relationship may have been with Perez, from that point until she finally appeared personally in the lawsuit in December 2013, she undoubtedly knew the progress of the foreclosure.  Thus, this basis for alleging a due process violation lacks merit.

Robinson also asserts her due process rights were violated because the post-judgment hearings in this case were constitutionally inadequate to satisfy minimum due process standards.  In this regard, as noted above, Robinson was well aware of the progress of the foreclosure proceeding.  Also, before seizure of her property, Robinson was officially notified of the writ of ejectment when a sheriff and others appeared at the property on December 7, 2013.  Robinson filed for and obtained a temporary stay of writ of ejectment until the December 27, 2013 hearing on her December 16, 2013 motion to stay.  The circuit court considered Robinson's arguments at the

December 27, 2013 hearing, before ultimately rejecting them. When Robinson filed her January 3, 2014 motion to reconsider, the circuit court scheduled the matter for hearing on February 4, 2014, but no ex parte motion for emergency stay was attached to this motion and no further stay was granted.  Robinson had previously shown awareness of the need for a court ordered stay to halt execution of a writ of ejectment.  After the January 25, 2014 execution of the writ of ejectment, the circuit court considered Robinson's additional arguments at the February 4, 2014 hearing on her motion to reconsider.  It also considered her filings with respect to her May 7, 2014 motion for return of possessions, then considered her arguments at the June 24, 2014 hearing before taking the motion under advisement and later summarily denying the motion.  Robinson was therefore given various opportunities to be heard before and after the seizure of her possessions.  She was provided with the opportunity to be heard at a meaningful time and in a meaningful manner as required by due process, and the process provided was fair.

Thus, Robinson's due process rights were not violated.

**D.    The circuit court should have granted Robinson's motion for return of possessions.**

Robinson also generally alleges that the circuit court erred in denying her motion for return of possessions.  Although Hawai'i law does not provide specific statutory protection for

41

tenants of foreclosed properties,[17] under our common law, foreclosure is an equitable action.  Hawaii Nat'l Bank, 100 Hawai'i at 7, 58 P.3d at 65.  "Courts of equity have the power to mold their decrees to conserve the equities of the parties under the circumstances of the case."  Honolulu, Ltd., 7 Haw. App. at 219, 750 P.2d at 948.  A court sitting in equity in a foreclosure case has the plenary power to fashion a decree to conform to the equitable requirements of the situation.  See Jenkins, 58 Haw. at 598, 574 P.2d at 1342.  Thus, whether and to what extent relief should be granted rests within the sound discretion of the court and will not be disturbed absent an abuse of such discretion.  See 58 Haw. at 597, 574 P.2d at 1341.

Therefore, our precedent allows courts to consider the equitable circumstances of all those involved in the foreclosure of a residential property, including tenants unnamed in the foreclosure.[18]  In this case, we have already held that the circuit court did not violate Robinson's procedural due process rights.  We must still address, however, whether the circuit court abused its equitable discretion by refusing to grant

---

[17]    See n.13, supra.

[18]    A court's equitable powers include the discretion to inquire with foreclosing parties regarding whether there are residential tenants, to require that residential tenants be provided notice of the foreclosure action, to provide adequate time under the circumstances for residential tenants to move out of the foreclosed premises, and to address other issues, including the disposition of tenants' personal possessions and security deposits.  In other words, courts have discretion to fashion decrees conforming to the equitable requirements of each foreclosure.

Robinson's motion for return of possessions.  In evaluating the equities, we note there is no indication that any payment was made to Peak Capital after its June 7, 2013 representation to the circuit court that the property had continued to be occupied for over five years without any payment toward the mortgage.[19] Also, there is no dispute that Peak Capital incurred substantial delay and expense in effectuating the foreclosure and ejectment.

On the other hand, although Robinson was not a residential tenant, she was not obligated on the note to Peak Capital and was not a mortgagor.  Peak Capital chose to execute the writ of ejectment on Saturday, January 25, 2014, while knowing the circuit court had scheduled a further hearing on Robinson's motion to reconsider on February 4, 2014.[20]  Robinson and other occupants of the property were surprised by the sudden appearance of the sheriff and movers.  Robinson argues that if Peak Capital had waited until the February 4, 2014 hearing on the motion to reconsider and the motion had been denied, Peak Capital would not have had to incur the over $10,000 to remove not only Robinson's possessions, but the possessions of Perez and the other occupants.

---

[19]    In addition, despite this being a judicial foreclosure, Peak Capital was precluded from obtaining a deficiency judgment as to Perez's pre-petition debts due to his bankruptcy discharge.

[20]    It is unclear whether the pending closing of the sale of the property to Kukui Farms Limited Liability Company prompted Peak Capital to execute the writ of ejectment before the February 4, 2014 hearing.  As noted, Robinson attached a February 17, 2014 special warranty deed to her June 13, 2014 reply memorandum to her motion for return of possessions.

When Peak Capital refused to return Robinson's possessions without payment of all of the ejectment costs, Robinson filed the May 7, 2014 motion for return of possessions. Robinson represented that her taken possessions included yearbooks, baby pictures, memorabilia of her deceased father, ashes of her deceased grandparent, sentimental childhood books, toys, prescription medication, legal files and evidence for this case, bedding, food, shoes, a cable box, a DVD player and rentals, mail, work tools, and third party IRS files. Although those executing the ejectment submitted declarations suggesting that Robinson was able to take the personal possessions she wished to take in the U-Haul she rented, at no time did Peak Capital dispute Robinson's descriptions of her possessions that had been taken. In addition, the circuit court judge summarily denied the motion with no indication he did not believe Peak Capital had taken the items Robinson asserted. Thus, there is no basis in the record to question Robinson's assertion that her personal possessions were taken.

Of the possessions listed by Robinson, it appears other than the toys, bedding, food, shoes, cable box, DVD player and rentals, and work tools, the other items had no monetary value to Peak Capital, and it appears that even those items had very little monetary value. Yet Peak Capital refused to return any of Robinson's possessions, including the ashes of her deceased

grandparent, without payment of the entirety of the ejection costs, exceeding $10,000.

In a foreclosure proceeding, whether and to what extent relief should be granted rests within the sound discretion of the court and will not be disturbed absent an abuse of such discretion. See Jenkins, 58 Haw. at 598, 574 P.2d at 1342. Under the circumstances, however, we conclude the circuit court abused its discretion by refusing to order Peak Capital to return Robinson's personal possessions, especially because the possessions consisted of items that had little or no value to Peak Capital but were priceless to Robinson.[21] It was especially inequitable to allow Peak Capital to hold Robinson's grandparent's ashes hostage for payment of eviction costs.

Thus, we hold the circuit court abused its equitable discretion by denying Robinson's motion for return of possessions. We therefore remand this case to the circuit court for further proceedings consistent with this opinion.

### V.   Conclusion

Based on the reasoning above, we vacate the ICA's April 20,

---

[21]    Refusal to return the third-party files may have also implicated the due process rights of third parties who had no notice and no opportunity to be heard.

2016 Judgment on Appeal, and remand this case to the circuit

court for further proceedings consistent with this opinion.

Linda Wilcox Robinson             /s/ Mark E. Recktenwald
petitioner pro se
                                  /s/ Paula A. Nakayama

Everett Walton
for respondent/                   /s/ Sabrina S. McKenna
plaintiff-appellee

                                  /s/ Richard W. Pollack

                                  /s/ Michael D. Wilson