HONOLULU, LIMITED and HRT, LTD., Plaintiffs-Appellees, *v.* JAMES C. BLACKWELL, VIRGINIA R. BLACKWELL, MICHAEL S. SEEMANN, LOVE-SEEMANN PROPERTIES, FIRST INTERSTATE BANK OF HAWAII, STEPHEN LOVE, JANET S. LENT-KOOP, RICHARD D. NELSON and AMERICAN CITY BANK, Defendants, *v.* SPECIALTY SURFACING CO. OF HAWAII, INC.; CASE, KAY & LYNCH, Intervenors, and ROBERT O. LIPPI, Intervenor-Appellant

NOS. 11674 AND 11754

(CIVIL NO. 3064)

FEBRUARY 23, 1988

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY HEEN, J.

In this foreclosure action Intervenor-Appellant Robert O. Lippi, Trustee appointed by the bankruptcy court (Trustee) for Defendant Love-Seemann Properties (Properties), a California partnership, contends that the lower court committed error when it authorized the commissioner to make excessive interest and late charge payments to Plaintiffs Honolulu, Limited (Honolulu), and HRT, Ltd. (HRT)[1] (where appropriate hereinafter Honolulu and HRT will be referred to collectively as Plaintiffs), out of the foreclosure sale proceeds. We vacate that portion of the June 3, 1986 Order Granting Motion For Confirmation Of Commissioner's Sale (Order) which authorized the interest and late charge payments and remand for further proceedings.

---

[1] Honolulu, Limited, and HRT, Ltd. (HRT), are both Hawaii corporations.

I.

Under a single agreement of sale (Agreement) dated May 5, 1978, Honolulu sold two adjoining pieces of real property in Hanalei, Kauai, to Defendants James C. Blackwell and Virginia R. Blackwell (hereinafter the Blackwells) for $475,000. The Agreement provided for a down payment of $25,000, monthly payments of interest only at the rate of 6% per annum, and payment of the full principal balance, together with interest, on May 22, 1983. Shortly thereafter, the Blackwells sold the two properties separately to Defendant Michael Seemann (Seemann) under two sub-agreements of sale (Sub-Agreements) in the amounts of $220,000 and $400,000. Seemann made down payments reducing the balances due to $200,000 and $360,000, respectively, which were to be paid in full on May 22, 1983, together with interest at 6% per annum.[2] Meanwhile, Seemann was required to make semi-annual interest payments. Seemann assigned all of his right, title and interest in the Sub-Agreements to Properties, a California partnership, in which Seemann and Defendant Stephen Love (Love) were general partners.

On May 18, 1982, the Blackwells assigned 15.179% of their interest in the Sub-Agreements to HRT, and, shortly thereafter assigned to HRT the interest payments already accrued and owing to the Blackwells under the Sub-Agreements. The Blackwells and Properties defaulted on the Agreement and Sub-Agreements by failing to pay their respective balances on May 22, 1983.

On June 20, 1983, Plaintiffs filed the action below against the Blackwells, Love, Seemann, Properties, and the other named defendants who it is alleged may claim interests in the property.[3] Plaintiffs sought cancellation of the Agreement and judgment against the Blackwells for the balance due together with interest and late charges or, alternatively, sale of the property and a deficiency judgment. Although the complaint alleged the particulars of

---

[2] Hereinafter the two properties will be referred to jointly as the property.

[3] Specialty Surfacing Co. of Hawaii, Inc., was allowed to intervene on its claim for money owed to it by the Blackwells for construction of a tennis court on the property. Case, Kay & Lynch were allowed to intervene to enforce a judgment against the Blackwells.

the Sub-Agreements and the assignments from the Blackwells to HRT, Plaintiffs did not request foreclosure of the Sub-Agreements and HRT was alleged to have joined the complaint as a "necessary party."[4] The complaint did request, however, that any sale bar all the defendants and persons claiming under them from all interest in the property.[5]

On October 19, 1983, Plaintiffs moved for summary judgment (Motion for Summary Judgment) and for appointment of a commissioner to sell the property. Properties moved for a continuance of the hearing on the Motion for Summary Judgment arguing that since the complaint did not ask for foreclosure of the Sub-Agreements, the motion was improper. The court continued the hearing on the Motion for Summary Judgment, ordered Plaintiffs to file another amended complaint, and held that interest on the Agreement was to be paid at 12% from May 22, 1983.

On December 6, 1983, Plaintiffs filed their second amended complaint seeking foreclosure of the Agreement and the Sub-Agreements, and for judgment against Properties in an amount representing 15.179% of the balance due on the Sub-Agreements "together with interest as allowed by law."[6] On February 22, 1984, the lower court entered findings that the Blackwells were in default on the Agreement, granted summary judgment, ordered the sale of the property at public auction, and appointed a commissioner. No findings were made on the Sub-Agreements. Properties neither filed affidavits in opposition to the Motion for Summary Judgment nor answered the second amended complaint.

On April 18, 1984, one day prior to the scheduled auction sale, Properties filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. 11 U.S.C § 101 *et seq.* The bankruptcy code's automatic stay, 11 U.S.C. § 362(a), was subsequently lifted by the

---

[4] Hawaii Revised Statutes § 667-2 (1985) requires that in a foreclosure proceeding all prior and subsequent mortgage creditors that are or can be discovered by the party foreclosing the mortgage shall be made parties in the action.

[5] Plaintiffs subsequently filed a first amended complaint. Those amendments are not relevant to this opinion.

[6] Plaintiffs alleged that the 15.179% represents the relationship between $85,000 owed to HRT by James C. Blackwell on certain leases, and the balances owed to the Blackwells by Seemann on the two Sub-Agreements.

bankruptcy court on Honolulu's motion and the proceedings resumed. On January 7, 1986, Trustee was appointed by the bankruptcy court.

After the original public auction was held, at which a high bid of $900,000 was received, the lower court received a petition to entertain a higher bid and conducted a further auction in the courtroom. The property was sold for $1.3 million, and the Order was entered. The Order confirmed the sale and authorized the commissioner to make the following payments, *inter alia*:

a) To Plaintiff HONOLULU, LIMITED.

    (1) Principal, interest and late
        charges (to April 21, 1986)       $657,875.00

    (2) Per diem after April 21,
        1986 to closing              156.16/day

b) To Plaintiff HRT, LTD.

    (1) Principal, interest and late
        charges (to April 21, 1986)       135,157.26

    (2) Per diem after April 21,
        1986 to closing              27.95/day

On June 20, 1986, Properties filed a motion asking the lower court to reconsider the late charges authorization, claiming that the amount was calculated on the entire principal balance due rather than on the overdue semi-annual payments as provided in the Sub-Agreements. Properties' motion was denied as untimely on July 21, 1986.

On July 28, 1986, Trustee was allowed to intervene, and on July 31, 1986, the commissioner filed his final report showing that the sale was closed on June 17, 1986, and from the sale proceeds he had paid $666,776.12 to Honolulu and $136,750.41 to HRT, and had deposited a balance of $393,484.80 with the clerk of the court. On August 20, 1986, Plaintiffs filed a motion under Rule 54(b), Hawaii Rules of Civil Procedure (HRCP) (1981), asking for certification of the Order as a final judgment.

Also on August 20, 1986, Trustee filed a motion under Rule 60, HRCP (Rule 60 Motion), for partial relief from the Order, claiming that the Order erroneously authorized the commissioner to pay interest to Plaintiffs at the rate of 12% and Honolulu and HRT were overpaid in the amounts of $56,671.16 and $27,577.02, respectively. Trustee requested that Honolulu and HRT be ordered

to refund the excess payments to him. The Rule 60 Motion was denied and Trustee filed a notice of appeal on October 1, 1986 (Supreme Court No. 11674). When Plaintiffs' motion for Rule 54(b) certification was granted on October 10, 1986, Trustee filed another notice of appeal (Supreme Court No. 11754). After joint oral argument we entered an order consolidating the two appeals.

On appeal Trustee asserts that the lower court erred in (1) authorizing any disbursements to HRT; (2) authorizing the assessment of late charges against the entire principal balances due under the Agreement and Sub-Agreements and interest at 12%; and (3) denying his Rule 60 Motion. Plaintiffs do not deny that the late charges are assessed against the entire unpaid balances and that the interest payments are calculated at 12%. However, they contend that (1) Trustee has no standing to question the disbursements made to Honolulu, (2) Trustee is estopped from attacking the payments made to HRT, and (3) the Agreement and Sub-Agreements provide for the 12% interest on the unpaid balance.

## II.
### A.

Trustee argues that the lower court erred in confirming any disbursements to HRT, contending that the Sub-Agreements were never properly placed before the lower court for adjudication and the lower court never determined whether they were valid, whether they were in default, or whether any amounts were due under them.

However, Trustee did not raise that issue in the lower court and he cannot raise it now. *Hong v. Kong*, 5 Haw. App. 174, 683 P.2d 833 (1984). Trustee's Rule 60 motion challenged only the combined late charges and interest payments. The motion did not challenge the foreclosure of the Sub-Agreements.

### B.

Trustee contends that the Agreement and the Sub-Agreements do not provide for the late payment charges to be assessed against the entire unpaid balance, or for interest on the unpaid balances to be assessed at 12%. We agree.

The provisions of the Agreement and the Sub-Agreements regarding interest are identical. Moreover, they are clear and unambiguous. They provide for interest on the unpaid balance at 6% per annum. In addition, the late charges provisions in the Agreement and Sub-Agreements uniformly provide that "if any installment is paid more than ten days after the date on which it is due, Purchaser shall pay in addition a *late charge of 4% of the payment* due[.]" (Emphasis added.) Those provisions provide for neither 12% interest nor a late charge on the entire balance due.

Plaintiffs argue, however, that Paragraph 17[7] of the instruments allows assessment of the 12% interest rate, and that it was the intent of the parties to require that interest rate on the unpaid balance.[8] Plaintiffs' argument is entirely groundless.

The 12% interest rate under Paragraph 17 is applicable only to monetary out-of-pocket expenses incurred by the seller for the purpose of protecting the seller's interest against any threats occasioned by the buyer's failure to observe any covenant or condition of the Agreement. Paragraph 17 cannot be construed as increasing the interest in the event of default.

C.

In view of the above, we hold that the court abused its discretion in denying Trustee's Rule 60 motion for partial relief. 11 C. Wright and A. Miller, Federal Practice and Procedure, *Civil* § 2857 (1973).

---

[7] Paragraph 17 provides:

17. ADVANCES BY SELLER. Upon any failure of the Purchaser to observe or perform any covenant or condition of this Agreement, or if any suit, proceeding or other contingency shall arise or be threatened relating to the property, the Seller may make any advances or incur such expenses or otherwise act as may in the Seller's judgment seem advisable to protect its interest hereunder (without impeachment for the invalidity of any tax, assessment, rate, encumbrance or charge paid in such behalf by the Seller). The Purchaser shall reimburse the Seller on demand for costs or expenses which it may pay or incur under any provision of this instrument for the protection of the premises or any of the rights of the Seller in connection with the property or this Agreement, and such sums shall bear interest at the rate of twelve percent (12%) per annum from the date of demand until paid.

[8] Plaintiffs also argue that Paragraph 17 is evidence that the parties contemplated that 12% interest would be charged upon default. The provision simply does not lend itself to the interpretation advanced by Plaintiffs.

Under the circumstances of this case, Trustee was entitled to relief in the form of a redetermination of the proper rate to be assessed for interest and late charges.

### III.

### A.

Plaintiffs argue that Properties, not being privy to the Agreement, has no standing to object to the payments made to Honolulu, and since Trustee merely stands in the shoes of Properties he, too, has no standing to object. In the reply brief Trustee responds that he is not concerned with the disbursements to Honolulu, but only with the payments to HRT under the Sub-Agreements. We disagree with Plaintiffs but, in view of Trustee's duties and functions, and since in the opening brief and in his motion for partial relief Trustee did question the payment to Honolulu, we are at a loss to understand Trustee's statement in the reply brief.

Under a reorganization petition a new entity is created which is different from the pre-petition entity. *Shopmen's Local Union No. 455 v. Kevin Steel Products, Inc.,* 519 F.2d 698 (2d Cir. 1975). A reorganization trustee has all the power of an ordinary trustee and of a receiver in equity.[9] *Central Hanover Bank and Trust Co. v. President and Directors of Manhattan Co.,* 105 F.2d 130 (2d Cir. 1939). The reorganization trustee is a fiduciary of each creditor of the estate, and "has a duty to treat all creditors fairly and to exercise that measure of care and diligence that an ordinarily prudent person under similar circumstances would exercise," *In re Cochise College Park, Inc.,* 703 F.2d 1339, 1357 (9th Cir. 1983), and may intervene in a state proceeding in order to claim the surplus and thereby protect the interest of the bankruptcy estate. *See Matter of Buchman,* 600 F.2d 160 (8th Cir. 1979). Trustee does not merely stand in Properties' shoes. *Shopmen's Local Union No. 455 v. Kevin Steel Products, Inc., supra.*

---

[9] Under 11 U.S.C. § 1106 the reorganization trustee is required to perform the duties of a trustee as specified in, *inter alia,* 11 U.S.C. § 704(5). 11 U.S.C. § 704(5) provides: "(5) if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper."

In view of the above principles, Trustee's position that he is not interested in the payments to Honolulu is untenable. All surplus funds after Honolulu is paid its just due should be used for expenses and to satisfy the claims of the other parties in this case, including Trustee. *See Powers v. Ellis,* 56 Haw. 587, 545 P.2d 1173 (1976); *see* HRS § 667-3. If Honolulu was in fact overpaid, Trustee and the other defendants have been deprived of monies due them. It follows that, although Trustee is not privy to the Agreement, he is definitely concerned whether the residual fund has received a proper share of the proceeds, and whether Plaintiffs' claims were improper. 11 U.S.C. § 704(5).[10] In our view, Trustee indeed has both standing, *see Akamine & Sons, Ltd. v. Hawaii National Bank, Honolulu,* 54 Haw. 107, 503 P.2d 424 (1972), and a legal duty to attack the payments to Honolulu, and we will treat the matter as though Trustee has done so.

Plaintiffs' reliance on *Powers v. Ellis, supra,* is misplaced. *Powers* merely holds that the liens of junior creditors need not be adjudicated before the lien of the first mortgage may be foreclosed. *Powers* does not preclude the junior lienors from questioning the propriety of the amounts paid to the preferred lienor.

### B.

Plaintiffs assert that at no stage of the proceedings below did Properties voice any objection to the 12% interest rate and, in fact, at the hearing on Properties' motion to continue the summary judgment hearing, Properties' attorney stipulated in open court that his clients were "willing to begin to pay interest at 12% which I understand is called for under the Agreement of Sale. They are willing to do that immediately." Plaintiffs contend that since Properties raised no objections below to the 12% interest rate, it is barred from contesting the interest award in this appeal.[11] The

---

[10] *See* footnote 9, *supra*

[11] In the answering brief Plaintiffs claim Trustee is barred by principles of "judicial estoppel," "entry of judgment by consent," "law of the case," and the prejudice that will result from setting aside the stipulation quoted above. Under the analysis in this Part III, Plaintiffs' claim is insupportable.

same bar, Plaintiffs contend, operates against Trustee since he merely stands in the shoes of Properties. We disagree.

First, we note that foreclosure is an equitable action, *Honolulu Plantation Co. v. Tsunoda,* 27 Haw. 835 (1924), and the function of the foreclosure court is to ascertain the precise amount due under the mortgage. *Id.* We have already found that the lower court erred in its determination of the interest and late charges due to Plaintiffs and that Trustee does not merely stand in Properties' shoes. It would be inequitable and unconscionable to allow Plaintiffs to keep the funds to which they are not legally entitled, and we will not permit Plaintiffs to use such a technical argument to protect themselves. *See Hustace v. Kapuni,* 6 Haw. App. ___, 718 P.2d 1109 (1986). Courts of equity have the power to mold their decrees to conserve the equities of the parties under the circumstances of the case. *Hawaiian Electric Co. v. Pacific Laundry Co.,* 2 Haw. App. 228, 629 P.2d 641 (1981).

Second, the court's order of continuance of the summary judgment hearing set the 12% interest rate on the Agreement only; it did not mention the Sub-Agreements or set their interest rates. Since Properties was not privy to the Agreement, its "stipulation" was irrelevant and could not have been used as a basis for the court's order. Consequently, whether or not the stipulation was a valid one the interest portion of the order did not apply to Properties.

Finally, Trustee raised the interest rate issue in his Rule 60 Motion.[12] In our view, that was sufficient to preserve the question for review. Plaintiffs' argument that Trustee's Rule 60 Motion was filed in bad faith and was an attempt to overcome the fact that Properties' motion to reconsider the Order was untimely under Rule 59(b) is without merit. The timeliness of Properties' motion to

---

[12] The pertinent provisions of Rule 60 are as follows:

RULE 60. RELIEF FROM JUDGMENT OR ORDER.

\* \* \*

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

\* \* \*

(6) any other reason justifying relief from the operation of the judgment.

reconsider is not before us. Suffice it to say that Trustee represents a separate entity from Properties, and Trustee's motion was timely under Rule 60.[13]

## C.

Although Plaintiffs also contend that they would be prejudiced if they were required to refund any excess payments, they have not pointed to anything to show that prejudice in fact would result. The record shows nothing that would overcome the inequity of allowing Honolulu and HRT to keep payments to which they were not entitled.

## IV.

We vacate the awards of interest and late charges to Plaintiffs and remand to the lower court with instructions to (1) recalculate the interest and late charges due Plaintiffs under the pertinent provisions of the Agreement and Sub-Agreements, and (2) order Plaintiffs to pay any excess funds received by them under the June 3, 1986 Order, together with interest at the contract rate of 6%, into the trust fund established by the court in this case. In all other respects, the Order is affirmed.

*Allen S. Chock* (*T. Irving Chang* and *Jo Ann M. Uchida* with him on the briefs; *Chang, Mui, Chang & Chock* of counsel) for intervenor-appellant Robert O. Lippi.

*Glenn M. Miyajima* (*Reuben S.F. Wong* and *Wayne H. Mukaida* with him on the briefs; Law Offices of *Reuben S.F. Wong* of counsel) for plaintiffs-appellees Honolulu, Ltd., and HRT, Ltd.

---

[13] Under Rule 60 the motion must be made within a reasonable time, except that a motion based upon mistake, newly discovered evidence and fraud must be made within one year after the judgment. In the instant case, the Rule 60 Motion was filed only 2 months and 17 days after the Order.