<span style="color:red">**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000486
28-FEB-2022
08:08 AM
Dkt. 71 AMOP**</span>

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---oOo---

U.S. BANK TRUST, N.A., AS TRUSTEE FOR
LSF9 MASTER PARTICIPATION TRUST, Plaintiff-Appellee,
v.
ASSOCIATION OF APARTMENT OWNERS OF
WAIKOLOA HILLS CONDOMINIUM PHASE I, Defendant-Appellant
and
MARSHALL D. CHINEN, ESQ., AS THE SUCCESSOR
PERSONAL REPRESENTATIVE FOR THE ESTATE OF
GALE DAWN DEFUENTES, DECEASED; JOHN DOES 1-20;
JANE DOES 1-20; DOE CORPORATIONS 1-20; DOE ENTITIES 1-20;
AND DOE GOVERNMENTAL UNITS 1-20, Defendants-Appellees

NOS. CAAP-18-0000486 AND CAAP-18-0000963
(CONSOLIDATED)

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 17-1-332K )

FEBRUARY 28, 2022

LEONARD, PRESIDING JUDGE, HIRAOKA AND WADSWORTH, JJ.

AMENDED OPINION OF THE COURT BY LEONARD, J.

This appeal addresses various issues raised by an apartment owners association, after having nonjudicially foreclosed upon an assessment lien and thereby taking title to an apartment unit, concerning its rights and interests after a subsequent foreclosure decree and judgment has been entered against its ownership interest. Many of the issues raised herein

are resolved in accordance with a recent opinion of this court in which we held, in relevant part:

> [T]he circuit court herein did not abuse its discretion in appointing a foreclosure commissioner to take possession and control of the subject unit upon the entry of the foreclosure decree and judgment. Under Hawaiʻi law, a judgment entered on a foreclosure decree is a final determination of a foreclosed party's ownership interests in the subject property – in other words, the property owner's ownership rights in the property are foreclosed, notwithstanding that further proceedings are necessary to enforce and otherwise effectuate the foreclosure decree and judgment.

Bank of New York Mellon v. Larrua, No. CAAP-17-0000904, 2022 WL 277671, *1 (Haw. App. Jan. 31, 2022).

Here, we address, *inter alia*, the further issue of whether a foreclosure commissioner is *vested* with legal and equitable title to the foreclosure property. We hold that a foreclosure commissioner is not granted vested rights or interests in the subject property. Rather, the commissioner merely acts as an agent or arm of court, acting on the court's behalf, and is vested only with the particular legal and/or equitable powers over the subject property that the court deems necessary to exercise the court's legal and/or equitable powers. Any powers vested in the commissioner by the court – such as the power to take possession and control, collect rents, preserve value, and offer the property for sale – remain subject to further orders of the court.

In this consolidated appeal, Defendant-Appellant Association of Apartment Owners of Waikoloa Hills Condominium Phase I (the **AOAO**) appeals from: (1) the May 30, 2018 Judgment (**Foreclosure Judgment**) entered by the Circuit Court of the Third

Circuit (**Circuit Court**)[1] in favor of Plaintiff-Appellee U.S. Bank Trust, N.A. (**U.S. Bank**); and (2) the November 20, 2018 Judgment (**Confirmation Judgment**) entered by the Circuit Court in favor of U.S. Bank.  The AOAO also challenges the Circuit Court's:  (1) May 30, 2018 Findings of Fact [(**FOFs**)], Conclusions of Law [(**COLs**)] and Order Granting Plaintiff's Motion for Summary Judgment Against All Defendants and for Interlocutory Decree of Foreclosure (**Foreclosure Decree**); and (2) November 20, 2018 Order Confirming Foreclosure Sale, Approving Commissioner's Report, Allowance of Commissioner's Fees, Attorney's Fees, Costs, Directing Conveyance and for Writ of Ejectment (**Confirmation Order**).

I.    BACKGROUND

On October 30, 2017, U.S. Bank filed a Complaint for Mortgage Foreclosure (**Complaint**) and claimed that on or about August 25, 2003, Gale D. DeFuentes (the **Former Owner**)[2] executed a promissory note to Summit Lending of Hawaii LLC in the amount of $139,500.00 (**Note**), secured by a mortgage (**Mortgage**) on the subject property, which is located on Paniolo Avenue in Waikoloa, Hawaiʻi (the **Property**).  The Complaint alleged that the Note was negotiated to U.S. Bank on December 14, 2016, and that the Mortgage was assigned to U.S. Bank and recorded on January 11, 2017.  U.S. Bank further alleged that it was the current holder of the Note with standing to foreclose and that it was entitled

---

[1]     The Honorable Robert D.S. Kim presided.

[2]     Because the Former Owner passed away in 2010, the Complaint instead named as defendant Marshall D. Chinen, Esq., in his capacity as the Successor Personal Representative for the Estate of the Former Owner.

to foreclose on the basis of the Former Owner's default on the Note.[3]

The Complaint alleged that the AOAO acquired an interest in the Property by virtue of a quitclaim deed (**Quitclaim Deed**) recorded on June 22, 2012, but that the AOAO's interests "are junior to [U.S. Bank]'s lien." U.S. Bank sought, *inter alia*: (1) an order that any ownership and lien interest claimed by any named defendants be adjudicated subordinate to the lien of U.S. Bank's Mortgage; and (2) the appointment of a commissioner to, *inter alia*, take possession of the Property, collect rents, and sell the Property.

In its December 22, 2017 answer to the Complaint (**Answer**), the AOAO admitted "it may claim an interest in the Property, but denie[d] that its interest is junior [to U.S. Bank's] lien." The Answer asserted an "Affirmative Statement of Claim," alleging that certain sums were assessed against the Property and constituted a lien in favor of the AOAO, and that the Former Owner had failed to pay a total of $3,251.14, as of March 5, 2015. The AOAO sought, *inter alia*, dismissal of the Complaint as to the AOAO and the distribution of any proceeds from the sale of the Property in accordance with Hawaii Revised Statutes (**HRS**) § 514B-146(g) and (h) (Supp. 2017).[4]

---

[3] Neither defendant challenged U.S. Bank's standing to enforce the Note. See U.S. Bank Tr., N.A. v. Verhagen, 149 Hawaiʻi 315, 489 P.3d 419 (2021); see also Bank of Am., N.A. v. Reyes-Toledo, 139 Hawaiʻi 361, 390 P.3d 1248 (2017).

[4] HRS § 514B-146(g) and (h) (Supp. 2017), now codified as HRS § 514B-146(j) and (k) (2018), provide, in pertinent part:

(continued...)

On March 13, 2018, U.S. Bank filed Plaintiff's Motion for Summary Judgment Against All Defendants and for Interlocutory Decree of Foreclosure (**Motion for Summary Judgment**).  U.S. Bank requested, *inter alia*, that the Circuit Court enter an order:

> 3.  To determine that [U.S. Bank's] Mortgage is a valid first lien upon the Property, except for delinquent real property taxes, if any;
>
> . . . .
>
> 6.  To determine, if appropriate and necessary, the validity and amount of the claims and liens, if any, of all parties herein and the priorities of such claims and liens;
>
> 7.  To appoint a Commissioner to take possession of the Property and direct that he or she:
>
> > a.  Possess, preserve, operate and manage the Property and all businesses and enterprises conducted thereon, including, but not limited to, collecting rental payments and revenues, taking control of all accounts and receivables, and paying and discharging from such funds received all of the ordinary costs and expenses related to the operation and management of the Property; and
> >
> > b.  Sell the Property by public sale in lawful money of the United States in the manner provided by law and the orders of this Court, and upon the confirmation of said sale by this Court, that the Commissioner be authorized and directed to make and deliver to the purchaser or purchasers, such instrument of conveyance as may be appropriate to transfer ownership of the Property, with the issuance of a Writ of Ejectment in favor of said purchaser or purchasers;

---

(...continued)

> **§ 514B-146  Association fiscal matters; lien for assessments**.
> . . . .
>
> (g)  Subject to this subsection, and subsections (h) and (i), the board may specially assess the amount of the unpaid regular monthly common assessments for common expenses against a mortgagee or other purchaser who, in a judicial or nonjudicial power of sale foreclosure, purchases a delinquent unit[.]
> . . . .
>
> (h)  The amount of the special assessment assessed under subsection (g) shall not exceed the total amount of unpaid regular monthly common assessments that were assessed during the six months immediately preceding the completion of the judicial or nonjudicial power of sale foreclosure.

8. To authorize and direct the Commissioner, after the payment of all necessary expenses of such sale, to make application of all the proceeds thereof so far as the same may be necessary to the payment of the amounts found due and owing to [U.S. Bank] under the Note and Mortgage, including advances, title search fees, costs, expenses, and attorneys' fees, as determined by the Court;

9. To authorize [U.S. Bank] or its designee to be a purchaser at any foreclosure sale made as aforesaid, and to credit bid up to the total amount due to [U.S. Bank] without the requirement of any down payment at said sale;
. . . .

11. To issue a Writ of Ejectment in favor of the purchaser at the foreclosure sale requested, commanding sheriffs to remove any tenants or occupants and any person holding by, through, or under any tenant or occupant, from the Property[.]

On April 10, 2018, the AOAO filed a limited memorandum in opposition to the Motion for Summary Judgment. The AOAO did not oppose U.S. Bank's request to foreclose on the Mortgage, as a first priority lien on the Property. Rather, the AOAO opposed any relief whereby a foreclosure commissioner would take possession of or collect rental proceeds from the Property. The AOAO asserted that it became the owner of the Property on June 22, 2012, upon completion of its nonjudicial foreclosure on the Property, and that HRS § 667-102(b)(4) (2016)[5] conferred the AOAO with immediate and exclusive possession of the unit,

---

[5]    HRS § 667-102(b)(4) states:

**§ 667-102  Recordation of affidavit, conveyance document; effect.**  (a) The affidavit required under section 667-101 and the conveyance document shall be recorded no earlier than ten days after the public sale is held but not later than forty-five days after the public sale is held.

. . . .

(b)    When both the [section 667-101] affidavit and the conveyance document are recorded:
. . . .

(4)    The purchaser shall be entitled to immediate and exclusive possession of the unit.

"effectuat[ing] a bar against any person claiming a right or interest in title."

The AOAO also cited HRS § 514B-146(k) (Supp. 2017)[6] as "clearly contemplat[ing]" the AOAO's continued possession and rental of the Property after the entry of the Foreclosure Judgment because it directs the AOAO to apply excess rental income received during that period in a particular manner. Specifically, the AOAO asserted that the plain language of HRS § 514B-146(k) would be violated if the court allowed U.S. Bank to take advantage of the AOAO's efforts and expenses, by appointing a commissioner to take possession of accounts and receivables

---

[6] HRS § 514B-146(k) (Supp. 2017), now codified at HRS § 514B-146(n) (2018), states:

> **§ 514B-146  Association fiscal matters; lien for assessments.**
> . . . .
>
> (k)  After any judicial or nonjudicial foreclosure proceeding in which the association acquires title to the unit, any excess rental income received by the association from the unit shall be paid to existing lien holders based on the priority of lien, and not on a pro rata basis, and shall be applied to the benefit of the unit owner.  For purposes of this subsection, excess rental income shall be any net income received by the association after a court has issued a final judgment determining the priority of a senior mortgagee and after paying, crediting, or reimbursing the association or a third party for:
> > (1)  The lien for delinquent assessments pursuant to subsections (a) and (b);
> > (2)  Any maintenance fee delinquency against the unit;
> > (3)  Attorney's fees and other collection costs related to the association's foreclosure of the unit; or
> > (4)  Any costs incurred by the association for the rental, repair, maintenance, or rehabilitation of the unit while the association is in possession of the unit including monthly association maintenance fees, management fees, real estate commissions, cleaning and repair expenses for the unit, and general excise taxes paid on rental income;
> provided that the lien for delinquent assessments under paragraph (1) shall be paid, credited, or reimbursed first.

that the AOAO has spent funds to generate, and hold or use them for U.S. Bank's benefit.

Finally, the AOAO argued that unless and until U.S. Bank acquired title to the Property, U.S. Bank was not entitled to an order granting it possession and rental proceeds from the Property owned by the AOAO. The AOAO urged the Circuit Court to "fashion an appropriate order allowing a commissioner to proceed without interfering with [the AOAO]'s interests."

In reply, U.S. Bank acknowledged that the AOAO had acquired title to the property by virtue of its nonjudicial foreclosure, but asserted that, in the event the Circuit Court granted the Motion for Summary Judgment, the AOAO's interest in the Property would be extinguished. The bank maintained that, as a result, the Commissioner, not the AOAO, would have the right to collect any rental proceeds from the Property. Citing HRS § 667-102(b)(3) (2016),[7] U.S. Bank also argued that once the AOAO's nonjudicial foreclosure sale was completed, its lien was foreclosed and ceased to exist as the AOAO was now the owner of the Property. U.S. Bank noted that upon acquiring title to the Property, the duty to pay the AOAO dues and assessments on the Property became the duty of the AOAO, but that following the

---

[7]    HRS § 667-102(b)(3) states:

> **§ 667-102  Recordation of affidavit, conveyance document; effect.**
> . . . .
> (b)    When both the [section 667-101] affidavit and the conveyance document are recorded:
>        . . . .
>
> (3)    The lien of the association and all liens junior in priority to the lien of an association shall be automatically extinguished from the unit[.]

Commissioner's appointment, "it is logical that the Commissioner will be required to pay any expenses associated with the Property." Finally, U.S. Bank argued that HRS § 514B-146(k)

> does not alter the legal effect of the [Order] appointing the Commissioner, which is that, once the Commissioner is appointed, the Commissioner has legal title to the property and the right and responsibility to collect rents, and the duty to pay (from the rental proceeds collected) his own fees and costs, the association dues and other maintenance expenses that accrue during said period to the extent that sufficient rents are collected, and the balance per instructions from the Court – in that order.

At the April 20, 2018 hearing on the Motion for Summary Judgment, the Circuit Court stated that

> on the issue of the taking possession, . . . the Court's position is that the granting of the summary judgment motion and appointing of the commissioner allows the Court to authorize the commissioner to take possession of the property and do whatever tasks are required to collect rents or take possession of the property.
>
> That doesn't address the issue of where the funds go, if there are any. . . . [i]f rents are being collected, and the commissioner feels that he or she can work with the tenants, then [he or she] can collect the rents. And he or she can take whatever action is appropriate under the equitable title vested in the commissioner pursuant to any summary judgment order issued by the Third Circuit Court.

On May 30, 2018, the Circuit Court entered the Foreclosure Judgment as well as the Foreclosure Decree, which concluded in part:

> [COL] 2. [U.S. Bank's] Mortgage is a valid mortgage lien on the Property with priority over any other Defendant junior liens and encumbrances thereon, except for the lien of any delinquent real property taxes.
> . . . .
>
> [COL] 7. [U.S. Bank] is entitled to the entry of summary judgment against all Defendants and an interlocutory decree of foreclosure against said Defendant in the foreclosure action, on the grounds that no genuine issue of material fact exists, and [U.S. Bank] is entitled to summary judgment and an interlocutory decree of foreclosure as a matter of law.

Pursuant to its FOFs and COLs, the Circuit Court ordered, in pertinent part:

> [FOF] 11. . . . Defendant AOAO's request to continue

to have possession of the Property is hereby DENIED. Commissioner, as appointed herein, is vested with legal and equitable title to the Property and it is within the discretion of the Commissioner if he/she will maintain any leases on the Property, if any remain.

. . . .

4. Rebecca Colvin, Esquire [(the **Commissioner**)], is hereby appointed Commissioner of this Court in this action, . . . and as Commissioner, is vested with legal and equitable interest in the Property and is authorized and directed to take possession and control of the Property, including but not limited to collecting rental payments and to sell the Property at a public auction[.] . . . A reasonable Commissioner's fees and costs shall be submitted to and awarded accordingly by the court, and shall be deemed to be secured by the Mortgage.

. . . .

6. Upon confirmation of the sale, the Commissioner is authorized and directed, after the payment of all necessary expenses of such sale, to make application of all the proceeds thereof and all funds which they hold in their capacity as Commissioner so far as the same may be necessary to the payment of amounts found due and owing to Plaintiff from the Borrowers under the Loan Documents, including advances, title search fees, costs, expenses, and attorney's fees, as determined by the this court.

. . . .

10. Any and all interest of all named Defendants that is junior to Plaintiff's interest is hereby terminated upon conveyance of the deed to the confirmed purchaser.

. . . .

12. This Court retains jurisdiction to ascertain the total amount that is due and owing to [U.S. Bank], consisting of the principal amount due under the Loan Documents, together with interest, advances, late charges, expenses, costs, and attorneys' fees thereon to the date of conveyance of the Property by the Commissioner.

13. This Court further retains jurisdiction to determine among other matters which may later come before this Court, the amount of fees and costs of the Commissioner and Plaintiff's attorneys and over any party to whom any surplus shall be awarded.

14. This Court retains jurisdiction to determine whether Defendant AOAO is entitled to a special assessment pursuant to [HRS] Section 514B-146(g) and (h),[8] and the amount of the same.

---

[8] These provisions are now codified at HRS § 514B-146(j) and (k) (2018), respectively.

10

On June 12, 2018, the AOAO timely filed a notice of appeal from the Foreclosure Judgment, initiating CAAP-18-0000486.

On August 14, 2018, the Commissioner filed her report, stating, *inter alia*, that she had collected rent in the amount of $725.80 and that U.S. Bank had bid highest on the Property at the foreclosure auction. The Commissioner submitted an explanation of fees and costs and requested:

> 1. That the Court approve and accept your Commissioner's report;
>
> 2. That a hearing be held to confirm the sale of the subject property to [U.S. Bank], for the sales price of $210,000.00;
>
> 3. That the Court allow your Commissioner reimbursement of expenses incurred in the sum of $867.49 and Commissioner's fees in the sum of [$]3,372.18;
>
> 4. That the Court allow rental proceeds collected in the amount of $725.80 (less G.E.T. to be paid to the State of Hawaii) to be paid to Commissioner to offset the total amount due Commissioner for fees and costs due from proceeds of the sale.
>
> 5. That upon your Commissioner conveying the subject property to the party to whom the sale thereof is confirmed, distributing funds to those persons and parties in the amounts and in the order of priority directed by this Court, and your Commissioner filing her Distribution Statement, attaching receipts of these amounts from these persons or parties, who are entitled to receive such amounts, your Commissioner stand discharged from any further responsibilities and liabilities thereof.

The AOAO objected to the Commissioner's Report only to the extent that the Commissioner requested payment from the rental proceeds the Commissioner collected, on the grounds that the AOAO should be allowed to retain the rent collected during its ownership of the Property.

On August 30, 2018, U.S. Bank filed Plaintiff's Motion for Order Confirming Foreclosure Sale, Approving Commissioner's Report, Allowance of Commissioner's Fees, Attorney's Fees, Costs, Directing Conveyance and for Writ of Ejectment (**Confirmation**

11

**Motion**). U.S. Bank requested, *inter alia*, that the Circuit Court order that rents from the Property collected by the Commissioner, if any, be paid to U.S. Bank and credited against the amounts due to U.S. Bank under the Note and Mortgage.

In a limited memorandum in opposition, the AOAO again argued that any rents from the Property collected by the Commissioner should be paid to the AOAO. The AOAO asserted that, pursuant to HRS § 514B-146(k):

> [T]he only circumstance in which [U.S. Bank] may be entitled to rental income from a unit owned by the [AOAO] is where (1) the [AOAO] obtained title to the unit by foreclosure, (2) a senior lienholder subsequently obtained summary judgment determining the priority of a senior mortgagee, and (3) excess rental income is "received by the association" after deducting distributions pursuant to HRS § 514B-146(k)(1)-(4).

According to the AOAO, because U.S. Bank did not show the existence of "excess rental income," it was not entitled to receive any rental income. Alternatively, the AOAO argued that - in the event the Circuit Court found that the Commissioner held legal and equitable title and that U.S. Bank was entitled to the rents collected - the Circuit Court should direct the Commissioner to pay the AOAO the monthly maintenance and reserve fees assessed against the Property from the date of the Foreclosure Decree until the completion of the foreclosure sale.

Following an October 30, 2018 hearing, the Circuit Court entered the Confirmation Order on November 20, 2018, ordering, *inter alia*:

> 6. The Commissioner is awarded the total sum of $4,239.67 for fees and costs. The Commissioner collected rent in the amount of $725.80 which shall be applied to her fees and costs.
>
> . . . .

12. Pursuant to HRS § 514B-146(j) and (k),[9] the purchaser shall be held responsible for unpaid regular monthly common assessments in an amount not to exceed the total amount of unpaid regular monthly common assessments that were assessed during the six months immediately preceding the completion of the foreclosure, provided the [AOAO] submits an accounting of any monthly common assessments paid and any rents received during the six months preceding the conclusion of the foreclosure.

The Confirmation Judgment was entered on November 20, 2018. On December 20, 2018, the AOAO timely filed a notice of appeal, initiating CAAP-18-0000963. On April 24, 2019, this court consolidated the two appeals under CAAP-18-0000486.

II. POINTS OF ERROR

In its appeal from the Foreclosure Judgment, the AOAO raised two points of error, contending that the Circuit Court erred when it: (1) purportedly vested the Commissioner with equitable and legal title to the Property; and (2) concluded that the AOAO's right to possess and collect rent from the Property was extinguished upon entry of the Foreclosure Decree (and Foreclosure Judgment), and ordered the Commissioner to take possession and control of the Property, including the collection of rent. In its subsequent appeal challenging the Confirmation Judgment, the AOAO raised two points of error, contending that: (1) based on its prior erroneous conclusion that the Commissioner was vested with title as of the Foreclosure Decree and Foreclosure Judgment, as of the entry of same, the Circuit Court erred in ordering that the $725.80 of rent collected by the Commissioner should be applied to her fees; and (2) the Circuit

_____

9 HRS § 514B-146 was amended, effective July 1, 2018, i.e., between the entry of the May 30, 2018 Foreclosure Decree and the November 20, 2018 Confirmation Order. 2018 Haw. Sess. Laws Act 195, § 6 at 672. Thus, while the Foreclosure Decree refers to HRS § 514B-146(g) and (h) (Supp. 2017), the Confirmation Order refers to the same subsections recodified as HRS § 514B-146(j) and (k) (2018), respectively.

13

Court erred when it ordered that the AOAO was awarded only six months of assessments.

III. <u>APPLICABLE STANDARDS OF REVIEW</u>

This court "review[s] an award of summary judgment *de novo* under the same standard applied by the circuit court." <u>HSBC Bank USA, Nat'l Ass'n v. Moore</u>, 144 Hawaiʻi 49, 53, 434 P.3d 1244, 1248 (App. 2018) (quoting <u>Salera v. Caldwell</u>, 137 Hawaiʻi 409, 415, 375 P.3d 188, 194 (2016)). "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." <u>Id.</u> (quoting <u>Caldwell</u>, 137 Hawaiʻi at 415, 375 P.3d at 194). "The court views all the evidence and inferences in the light most favorable to the party opposing the motion." <u>Bank of Am., N.A. v. Reyes-Toledo</u>, 139 Hawaiʻi at 367 n.9, 390 P.3d at 1254 n.9 (citation omitted). "The moving party bears the burden of demonstrating that there is no genuine issue as to any material fact with respect to the essential elements of the claim[.]" <u>Id.</u> (citation omitted).

The interpretation of a statute is a question of law which the appellate court reviews *de novo*. <u>Sakal v. Ass'n of Apartment Owners of Hawaiian Monarch</u>, 148 Hawaiʻi 1, 5, 466 P.3d 399, 403 (2020); <u>Mount v. Apao</u>, 139 Hawaiʻi 167, 174-75, 384 P.3d 1268, 1275-76 (2016). "Where the language of the statute is plain and unambiguous, our only duty is to give effect to its plain and obvious meaning." <u>Apao</u>, 139 Hawaiʻi at 175, 384 P.3d

at 1276 (citing <u>Sierra Club v. Dep't of Transp.</u>, 120 Hawaiʻi 181, 197, 202 P.3d 1226, 1242 (2009)).

"Foreclosure is an equitable action" and "[c]ourts of equity have the power to mold their decrees to conserve the equities of the parties under the circumstances of the case." <u>Peak Capital Grp., LLC v. Perez</u>, 141 Hawaiʻi 160, 172, 407 P.3d 116, 128 (2017) (citing <u>Hawaiʻi Nat'l Bank v. Cook</u>, 100 Hawaiʻi 2, 7, 58 P.3d 60, 65 (2002) (**Hawaiʻi Nat'l Bank II**); <u>Honolulu, Ltd. v. Blackwell</u>, 7 Haw. App. 210, 219, 750 P.2d 942, 948 (1988)). "Whether and to what extent relief should be granted rests within the sound discretion of the court and will not be disturbed absent an abuse of such discretion." <u>Id.</u> (citing <u>Jenkins v. Wise</u>, 58 Haw. 592, 597, 574 P.2d 1337, 1341 (1978)).

"The lower court's authority to confirm a judicial sale is a matter of equitable discretion." <u>Hoge v. Kane II</u>, 4 Haw. App. 533, 540, 670 P.2d 36, 40 (1983) (citing <u>Wodehouse v. Hawaiian Tr. Co., Ltd.</u>, 32 Haw. 835, 852 (1933)). "Hence, [t]he exercise of discretion by the lower court judge will not be disturbed on appeal except for abuse." <u>Indus. Mortg. Co., L.P. v. Smith</u>, 94 Hawaiʻi 502, 510, 17 P.3d 851, 859 (App. 2001) (quoting <u>Brent v. Staveris Dev. Corp.</u>, 7 Haw. App. 40, 45, 741 P.2d 722, 726 (1987)) (internal quotation marks omitted).

IV. <u>DISCUSSION</u>

    A. <u>Appointment of a Foreclosure Commissioner</u>

The AOAO argues, *inter alia*, that the Circuit Court erred when it purportedly vested the Commissioner with equitable and legal title to the Property, and divested the AOAO of

equitable and legal title to the Property, at the time of the entry of the Foreclosure Judgment and the Foreclosure Decree. The AOAO maintains that it rightfully retained both legal and equitable title after the entry of the Foreclosure Decree, including the right to collect and retain rents.

The Intermediate Court of Appeals (**ICA**) recently addressed these issues, in part, in Larrua, 2022 WL 277671, at *1, wherein the ICA held, in relevant part:

> [T]he circuit court herein did not abuse its discretion in appointing a foreclosure commissioner to take possession and control of the subject unit upon the entry of the foreclosure decree and judgment. Under Hawaiʻi law, a judgment entered on a foreclosure decree is a final determination of a foreclosed party's ownership interests in the subject property – in other words, the property owner's ownership rights in the property are foreclosed, notwithstanding that further proceedings are necessary to enforce and otherwise effectuate the foreclosure decree and judgment.

For the reasons stated in Larrua, and based on the authorities cited therein, as well as the record in this case, we conclude that: (1) although the AOAO became the owner of the Property on June 22, 2012, upon completion of the nonjudicial foreclosure of its assessment lien on the Property, and HRS § 667-102(b)(4) (2016)[10] conferred the AOAO with immediate and

---

[10] HRS § 667-102(b)(4) states:

> **§ 667-102 Recordation of affidavit, conveyance document; effect.** (a) The affidavit required under section 667-101 and the conveyance document shall be recorded no earlier than ten days after the public sale is held but not later than forty-five days after the public sale is held.
> . . . .
>
> (b) When both the [section 667-101] affidavit and the conveyance document are recorded:
> . . . .

(continued...)

16

exclusive possession of the unit, nothing in HRS § 667-102 precluded the appointment of a commissioner to possess and control the Property upon a pre-existing mortgagee's subsequent judicial foreclosure of the subject property; (2) the AOAO took title of the Property subject to the Mortgage; (3) upon the Circuit Court's granting of the Motion for Summary Judgment, the AOAO's ownership interest in the Property was foreclosed, notwithstanding that further proceedings were necessary to enforce and otherwise effectuate the Foreclosure Decree and Foreclosure Judgment; (4) the Circuit Court's appointment of the Commissioner, authorizing and directing her to take possession and control of the Property, to collect rents, and to sell the Property at a public auction, was consistent with the Circuit Court's equitable powers and standard practices; (5) the appointment of the Commissioner to take possession and control of the Property, after the entry of the Foreclosure Decree and Foreclosure Judgment, was not contrary to HRS § 514B-146(b) (Supp. 2017);[11] and (6) HRS §514B-146(k) (Supp. 2017) addresses how an AOAO must utilize any rental income it receives after its own foreclosure on the unit, when its interest is subsequently foreclosed upon by a mortgagee, but it does not necessarily entitle an AOAO to receive such rental income from a unit following the subsequent entry of a foreclosure decree and

---

[10] (...continued)
> (4)    The purchaser shall be entitled to immediate and exclusive possession of the unit.

[11]    HRS § 514B-146(b) was amended in 2018 with respect to its reference to former subsection (g), which had been recodified as subsection (j). 2018 Haw. Sess. Laws Act 195, § 4 at 669-70. Otherwise, the text of HRS § 514B-146(b) relevant to this appeal was unaltered by the 2018 amendments.

judgment in favor of a mortgagee, and it did not affect the Circuit Court's equitable powers to appoint the Commissioner to take possession and control of the Property upon the entry of the Foreclosure Decree and Foreclosure Judgment in this case. See Larrua, 2022 WL 277671, at *15. Accordingly, we conclude that the Circuit Court did not err or abuse its equitable powers in directing the Commissioner to take possession and control of the Property upon the entry of the Foreclosure Decree and Foreclosure Judgment, including the collection of rent.

That said, unlike the foreclosure decree in Larrua, here the Foreclosure Decree specifically ordered, in part, that the Commissioner "is vested with legal and equitable interest in the Property." The Circuit Court's statement that the Commissioner was *vested* with legal and equitable property interests is problematic. Black's Law Dictionary defines "vested" as "[h]aving become a completed, consummated right for present or future enjoyment; not contingent; unconditional; absolute." Vested, Black's Law Dictionary (11th ed. 2019).[12]

---

[12] Black's Law Dictionary further notes:

"[U]nfortunately, the word 'vested' is used in two senses. Firstly, an interest may be vested *in possession*, when there is a right to present enjoyment, e.g. when I own and occupy Blackacre. But an interest may be vested, even where it does not carry a right to immediate possession, if it does confer a fixed right of taking possession in the future." George Whitecross Paton, *A Textbook of Jurisprudence* 305 (G.W. Paton & David P. Derham eds., 4th ed. 1972)

"A future interest is *vested* if it meets two requirements: first that there be no *condition precedent* to the interest's becoming a present estate other than the *natural expiration* of those estates that are prior to it in possession; and second, that it be *theoretically* possible to identify who would get the right to possession if the interest should become a present estate *at any time*." Thomas F. Bergin &
(continued...)

18

Albeit in another context, the ICA has held that "[r]ights are vested when the right to enjoyment, present or prospective, has become the property of some particular person or persons as a present interest." Maunalua Bay Beach Ohana 28 v. State, 122 Hawaiʻi 34, 53, 222 P.3d 441, 460 (App. 2009), cert. denied, 2010 WL 2329366 (June 9, 2010) (citing Damon v. Tsutsui, 31 Haw. 678, 693 (1930) (internal citations omitted)).

As discussed in Larrua, a foreclosure commissioner is a neutral party acting for the court upon the court's entry of a foreclosure decree, which appoints the commissioner and enumerates the commissioner's duties and powers. Larrua, 2022 WL 277671, at *10. A foreclosure commissioner is not granted absolute or unconditional rights in a property in his or her charge, and therefore, we hold that a foreclosure commissioner is not granted vested rights or interests in the subject property. See generally 55 Am. Jur. 2d Mortgages § 802, Westlaw (database updated February 2022) ("A temporary receiver appointed in a real estate foreclosure action does not take title[.]"). Rather, the commissioner merely acts as an agent or arm of the court, acting on the court's behalf, and is vested only with the particular legal and/or equitable powers over the subject property that the court deems necessary to exercise the court's legal and/or equitable powers. Larrua, 2022 WL 277671, at *10. Any powers vested in the commissioner by the court – such as the power to

(...continued)
        Paul G. Haskell, *Preface to Estates in Land and Future Interests* 66-67 (2d ed. 1984).

Vested, Black's Law Dictionary (11th ed. 2019).

take possession and control, collect rents, preserve value, and offer the property for sale – remain subject to the further orders of the court.

Accordingly, we conclude that the Circuit Court erred in stating that the Commissioner was vested with legal and equitable interest in the Property, as opposed to being vested with certain powers and charged with certain duties with respect to the Property. However, as we have previously concluded, the Circuit Court did not err or abuse its discretion in ordering the Commissioner to take possession and control of the Property, including the collection of rents. The AOAO does not assert or explain how it was otherwise harmed by the Circuit Court's misstatement of the Commissioner's duties and powers with respect to the Property as being legal and equitable interests in the Property. The AOAO does not argue, for example, that the Commissioner acted inconsistently with the duties and powers that were properly vested in her in these foreclosure proceedings. Thus, we further conclude that the Circuit Court's error was harmless.

B.  Payments Ordered in the Confirmation Order

In its appeal from the Confirmation Judgment, the AOAO reiterates its arguments addressed above and further argues that, as a result of the Circuit Court's errors in the Foreclosure Decree, the court erred when it failed to order that the $725.80 of rent collected by the Commissioner should be paid to the AOAO. As stated above, we reject the AOAO's argument that it was entitled to exclusive possession and control of the Property and

its rents, even after the entry of the Foreclosure Decree and Foreclosure Judgment, and that the Circuit Court erred in the Foreclosure Decree when it ordered the Commissioner to take possession and control of the Property, including the collection of rent.

The AOAO further argues that the Circuit Court abused its discretion in assessing the equities involved when it ordered that the $725.80 of rent collected by the Commissioner be applied to the Commissioner's fees and costs, rather than applying the monies to the AOAO's assessments, in effect reducing the amount payable to the Commissioner from U.S. Bank in the settlement of funds after the execution of the sale of the Property. In the alternative, the AOAO contends that, if the Commissioner was properly deemed the owner of the Property from the May 30, 2018 entry of the Foreclosure Decree and Foreclosure Judgment to the closing of the sale of the Property, then the Circuit Court acted inequitably and abused its discretion in failing to require the Commissioner to pay common maintenance fees for that period from May 30, 2018, to the completion of the foreclosure sale.

As a preliminary matter, we note that in the Confirmation Order entered on November 20, 2018, the Circuit Court ordered, *inter alia*:

> 12. Pursuant to HRS § 514B-146(j) and (k), the purchaser shall be held responsible for unpaid regular monthly common assessments in an amount not to exceed the total amount of unpaid regular monthly common assessments that were assessed during the six months immediately preceding the completion of the foreclosure, provided the [AOAO] submits an accounting of any monthly common assessments paid and any rents received during the six months preceding the conclusion of the foreclosure.

Thus, the purchaser of the Property was ordered to pay the AOAO for unpaid monthly assessments during the six-month period prior to conveyance of the Property, which was completed on December 4, 2018.[13]

With regard to the equities of the case before the Circuit Court, the AOAO made a generalized argument that associations rarely even break even in trying to collect delinquent assessments and fees, but maintained that its right to the rent was pursuant to HRS § 514B-146(k) and that no law or equitable principle could justify the post-foreclosure-judgment rents benefitting the lender, as that would be contrary to the statute. We have rejected the AOAO's argument that HRS § 514B-146(k) required that post-foreclosure-judgment rents must be paid to the association, except for "excess rents." See Larrua, 2022 WL 277671, at *14-15.

On appeal, the AOAO argues that, with respect to the rents collected by the Commissioner, the Confirmation Order was an inequitable abuse of discretion because non-defaulting unit owners would be forced to bear a greater burden stemming from the Former Owner's default, whereas the lender could credit bid up to the amount owed to it by the Former Owner and thereby make itself whole. Even assuming, *arguendo*, that this argument was not waived by the failure to raise it in the Circuit Court,[14] it is untethered to any reference to factual findings or evidence in

_____

[13] As requested by U.S. Bank, pursuant to Rule 201 of the Hawaiʻi Rules of Evidence, we take judicial notice of the Commissioner's Apartment Deed record in the Bureau of Conveyances of the State of Hawaiʻi on December 4, 2018, which conveyed ownership of the Property to U.S. Bank.

[14] See Hawaiʻi Rules of Appellate Procedure Rule 28(b)(4).

the record supporting its assertions. Nor does the AOAO cite authorities supporting its argument that the Circuit Court's balancing of equities here, even if supported by the record, would amount to an abuse of discretion.

Paragraph 12 of the November 20, 2018 Confirmation Order required the AOAO to submit an accounting of any monthly common assessments paid and any rents received during the six months preceding the sale of the Property. Prior to that, at an October 30, 2018 hearing, the Circuit Court orally directed the AOAO to produce such an accounting from the entry of the Foreclosure Decree and the AOAO stated that it would do so. However, it does not appear from the record that any accounting was ever submitted. In her report, the Commissioner reported that the Property was occupied, the Commissioner collected $725.80 in rent, but the tenant was vacating the Property as of July 15, 2018. There is nothing in the record showing whether or not the AOAO received any rent and/or monthly assessments from tenant at any time after the entry of the Foreclosure Decree and Foreclosure Judgment.

Under the circumstances of this case, we cannot conclude that the Circuit Court abused its discretion in assessing the equities involved when it ordered that the $725.80 of rent collected by the Commissioner be applied to the Commissioner's fees and costs. Nor can we conclude that the Circuit Court abused its discretion by failing to order the

Commissioner to pay the AOAO monthly assessments after the entry of the Foreclosure Decree and Foreclosure Judgment.

CONCLUSION

For the reasons stated in this Opinion, the Circuit Court's May 30, 2018 Foreclosure Judgment and November 20, 2018 Confirmation Judgment are affirmed.

On the briefs:

R. Laree McGuire,
(Porter McGuire Kiakona &
 Chow, LLP),
for Defendant-Appellant.

Charles R. Prather,
Peter T. Stone,
(TMLF Hawaii LLLC),
for Plaintiff-Appellee.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge